COMMONWEALTH vs. OLGA OLIVO
(and a companion case[1]).

Hampden.    September 16, 1975. — November 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Housing Court of the County of Hampden.    Practice, Criminal,*
Report.    *Constitutional Law,* Due process of law, Equal pro-
tection of laws.    *Notice.    Words,* "Reckless."

A judge of the Housing Court of the County of Hampden, established
by G. L. c. 185B, may report important or doubtful questions of
law arising in a criminal trial to the Supreme Judicial Court pur-
suant to c. 278, § 30.   [65-66]
In order for an offense charged in a complaint in a proceeding under
G. L. c. 185B to be criminal, the offense must be either "wilful,
intentional, reckless or repeated."   [66-67]
Conduct of a Spanish-speaking occupant of an apartment in Spring-
field unable to read English was "reckless" within the meaning of
that word in G. L. c. 185B, § 20, and she was properly convicted
upon a complaint for failing to comply with an order of the
housing department of the city, written in English only, to vacate
the apartment as unfit for human habitation where it appeared
that the occupant was served in hand with the order by a con-
stable and that thereafter she did nothing to comply with it,
although subsequently a housing department inspector reinspected
the apartment and visited with the occupant four times and dis-
cussed the meaning of the order and suggested places to seek an
apartment.   [67-68]
Rule stated with respect to the constitutional adequacy of an official
notice received by a person under a disability.   [69]
An official order to vacate written in English only and received by a
Spanish-speaking occupant of an apartment unable to read English,
served in hand by a constable, was constitutionally sufficient [70];
a statement in the order that noncompliance would result in
penalties as provided by law gave fair warning of criminal pen-

---

[1] Commonwealth vs. Lucy Colon.

alties, and conviction of the occupant on a complaint charging failure to comply with the order did not violate the due process guaranty of the Fourteenth Amendment to the United States Constitution [68-71].

A governmental policy of sending notices in English only, placing the burden of having the notice translated on persons not literate in English, and conviction of such a person for failure to comply with an English-only notice, do not violate the equal protection provision of the Fourteenth Amendment to the United States Constitution. [72-73]

A statement in an order of the housing department of a city to vacate described premises as unfit for human habitation that failure to comply with the order would result in "penalties as provided by law" was sufficient to put the recipient on notice that the penalties might include criminal sanctions, and satisfied due process requirements. [73-74]

Two COMPLAINTS received and sworn to in the Housing Court of the County of Hampden on September 16, 1974.

The cases were heard by *Greaney,* J., and reported by him after findings of guilty.

*Angel I. Olmeda* (*Samuel Stonefield* with him) for the defendants.

*Leonard A. Shatz* for the Commonwealth.

*Jack J. Olivero, Herbert Teitelbaum, M. D. Taracido, Kenneth Kimerling, & Manuel del Valle,* of New York, for Puerto Rican Legal Defense & Education Fund, Inc., amicus curiae, submitted a brief.

TAURO, C.J.    These cases are before us on a report from the Housing Court of the County of Hampden pursuant to G. L. c. 278, § 30.    They raise novel questions in this Commonwealth regarding the adequacy of English-only notice to persons not literate in English.

Briefly, the facts found by the Housing Court judge are as follows:    The defendants are natives of Puerto Rico who have resided in this country for some years.    Both defendants speak little English and are unable to read English.    Both resided at all material times in the Spanish-speaking north end of Springfield.

Some time prior to August 1, 1974, an inspector from the Springfield housing department inspected the apart-

ments occupied by the defendants and their children, and condemned them as unsafe and unfit for human habitation. In addition, in the case of the defendant Olivo, the living unit was condemned due to overcrowding. Both apartments contained serious health and safety defects.

On August 14, 1974, both defendants were served in hand by a constable with notices ordering them to vacate. The notice stated the reasons for the orders and advised the defendants both of their right to an administrative hearing and of the fact that noncompliance would result in penalties as provided by law. A housing department inspector reinspected the premises on four subsequent occasions and found the defendants still residing therein. The inspector discussed the meaning of the orders to vacate with both defendants in "broken English" and suggested places where they might seek apartments. Both defendants were unable to read or understand the written orders to vacate.

On September 16, 1974, criminal complaints were issued against both defendants for failure to comply with the housing department's orders. The defendants were arraigned on October 2, 1974, and trial was held on December 4, 1974. At all criminal proceedings, the defendants were represented by counsel.

The defendants filed motions to dismiss the complaints on the grounds that the English-only notice was constitutionally insufficient and that convictions for failure to comply therewith would violate due process and equal protection guaranties. These motions were denied, and the judge found the defendants guilty.[2] He assessed a fine of $100 against each defendant, but, because the questions raised by the defense were so important or doubtful as to require decision by the Supreme Judicial

---

[2] At the conclusion of the trial, the judge issued an interim order directing the housing specialist department to contact the Springfield redevelopment authority to arrange to have the defendants moved as quickly as possible. The defendants were successfully relocated by December 16, 1974, the date of decision on their motion to dismiss.

Court, he stayed payment of the fines and reported the following questions to this court:

(a) "Can a Spanish-speaking person, who is not able to read English, be convicted of the crime of refusing to comply with a written order of a Housing Department, when said written order is written entirely in English?"

(b) "Does it violate the due process and equal protection provisions of the Fourteenth Amendment . . . [to] the U.S. Constitution to convict a Spanish-speaking person, who is not able to read English, of the crime of refusing to comply with a written order, when said written order is written entirely in English?"

(c) "Is the Housing Department notice sufficient under due process requirements to warrant issuance of a criminal complaint when the only warning that its language gives as to the possibility of a criminal complaint is that failure to abide by the order will result in 'penalties as provided by law?'"

1. Although this jurisdictional issue has not been briefed by the parties, before answering the reported questions, we think it appropriate to address the threshold question whether G. L. c. 278, § 30, which provides for report "upon the trial of a person convicted in the superior court," applies to the Housing Court. We believe it does.

The Housing Court of the County of Hampden was established by G. L. c. 185B, inserted by St. 1973, c. 591, § 1, and was given "common law and statutory jurisdiction concurrent with the . . . superior court of all crimes and of all civil actions . . . [under the relevant sections]." G. L. c. 185B, § 3. We believe that, by conferring such jurisdiction on the court, "the Legislature has sufficiently indicated its intention that appellate review of decisions of the Housing Court is to be had directly by this court, and that the judge of the Housing Court is to exercise the powers of a Superior Court judge to that end." *Commonwealth* v. *Haddad,* 364 Mass. 795, 797 (1974). Accordingly, we hold that judges of the Housing Court

may report important or doubtful questions of law to this court pursuant to G. L. c. 278, § 30.

2. The first question reported by the judge asks whether a Spanish-speaking person who is unable to read English can be convicted of the crime of refusing to comply with a written order, where that order is written entirely in English. In light of the fact that the second question addresses the constitutional issues raised, we construe this question to ask whether the statute, G. L. c. 185B, § 20, allows a conviction in these circumstances.[3] We believe it does.

General Laws c. 185B, § 20, inserted by St. 1973, c. 591, § 1, sets out the method of initiating proceedings in the Housing Court, and provides that criminal cases are to be commenced by complaint. However, it further provides that, "[n]otwithstanding that a proceeding under this chapter is commenced by complaint, if the housing court finds that the offense charged was not wilful, intentional, reckless or repeated, the proceeding shall not be deemed criminal . . . ." In the context of this statute, the use of the word *shall* makes this section mandatory, and requires that the judge find, "wilful, intentional, reckless or repeated" conduct in order to convict. See *Johnson* v. *District Attorney for the N. Dist.*, 342 Mass. 212, 215 (1961); *Assessors of Springfield* v. *New England Tel. & Tel. Co.*, 330 Mass. 198, 201 (1953).

In light of what we have said, then, in order for a failure to comply to be deemed criminal, it must be shown that such failure was *either* wilful, intentional, reckless *or* repeated. A showing of any one of these

---

[3] We note that the parties did not construe the question in this manner. However, if we were to treat the first question as dealing with the constitutional questions also, as do the parties, there would be no need for separate questions. We do not favor constructions that render independent sections or questions meaningless or superfluous. Cf. *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974); *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authority*, 352 Mass. 617, 618 (1967).

statutory requirements will support a conviction.[4]   We believe the convictions here may be sustained because, on the facts of this case, the judge could have found that the defendants' failure to comply with the housing department's orders was reckless.

The word "reckless," as used in this statute, has never been construed by this court.   We have interpreted the word in other contexts.   See, e.g., *Hutchinson* v. *New England Tel. & Tel. Co.*, 350 Mass. 188 (1966) (construing the extent of a conditional privilege in libel cases); *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944) (construing the requirements for conviction of involuntary manslaughter); *Banks* v. *Braman*, 188 Mass. 367 (1905) (construing the duty of care owed to trespassers).   While none of these interpretations is wholly analogous to the cases before us, we draw support for our interpretation from them.

" [R]eckless conduct may consist of intentional failure to take [necessary] care in disregard of the probable harmful consequences . . . ."   *Commonwealth* v. *Welansky, supra* at 397.   However, " [w]hat must be intended is the conduct, not the resulting harm."   *Id.* at 398. " [R]eckless conduct amounts to what has been variously described as indifference to or disregard of probable consequences  . . . ."   *Id.*  at  399.   In  determining whether any given conduct may be deemed reckless, we must look to the circumstances of the particular case. *Hutchinson* v. *New England Tel. & Tel. Co., supra* at 192.

In the instant cases, the defendants' apartments were inspected  by  a  housing  department  inspector  and numerous violations were found.   Shortly thereafter, a constable came to the apartments and personally served

---

[4] "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise. . . .   The present statutory context does not demand or even suggest other than a disjunctive meaning." *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Authority,* 350 Mass. 340, 343 (1966).

each defendant with an official order to vacate. Subsè-
quent to this service, an inspector from the housing
department visited with the defendants four times. He
reinspected the apartments and attempted to explain to
the defendants the meaning of the orders to vacate and
the alternatives available to them. In response to this
series of official contacts, the defendants did nothing.
They made no attempt to have the official notice
translated, nor did they make any other effort to
ascertain the meaning and significance of the orders. In
the circumstances, the judge could correctly have found
that the conduct of the defendants in disregarding the
official orders was reckless. Accordingly, we answer the
first question, "Yes."

3. The second question asks whether it would violate
the due process and equal protection provisions of the
United States Constitution to convict a Spanish-speaking
person who is unable to read English of the crime of
failing to comply with a notice written entirely in
English. We think it would not.

### a.  *Due Process.*

The United States Supreme Court has considered the
question of sufficiency of notice on many occasions. It
has uniformly held that the adequacy of notice so far as
due process is concerned is dependent on whether the
form of notice provided is "reasonably calculated to give
. . . actual notice of the proceedings and an opportunity
to be heard." *Milliken* v. *Meyer,* 311 U.S. 457, 463
(1940). Accord, *Robinson* v. *Hanrahan,* 409 U.S. 38,
39-40 (1972); *Schroeder* v. *City of N.Y.,* 371 U.S. 208,
211-212 (1962); *Walker* v. *Hutchinson,* 352 U.S. 112, 115
(1956); *Covey* v. *Somers,* 351 U.S. 141, 146 (1956); *City
of N.Y.* v. *New York, N.H. & H.R.R.,* 344 U.S. 293,
296-297 (1953); *Mullane* v. *Central Hanover Bank &
Trust Co.,* 339 U.S. 306, 314 (1950). Our own decisions
reflect similar thinking. See *Milton* v. *Massachusetts Bay*

*Transp. Authority,* 356 Mass. 467, 471 (1969); *Rousseau v. Building Inspector of Framingham,* 349 Mass. 31, 37 (1965). Cf. *Opinion of the Justices,* 365 Mass. 681, 693 (1974).

It is equally well settled that " [n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Essex Nat'l Bank v. Hurley,* 16 F.2d 427, 428 (1st Cir. 1926), quoting in substance from *Coder v. McPherson,* 152 F. 951, 953 (8th Cir. 1907). See *United States v. Shelby Iron Co.,* 273 U.S. 571, 581 (1927); *Ives v. Sargent,* 119 U.S. 652, 661 (1887); *Wollensak v. Reiher,* 115 U.S. 96, 99 (1885); *The Lulu,* 77 U.S. (10 Wall.) 192, 202 (1869). A party may not "shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received." *NLRB v. Local 3, RWDSU,* 216 F.2d 285, 288 (2d Cir. 1954), quoting from *The Lulu, supra* at 201. Accord, *NLRB v. Regal Aluminum, Inc.,* 436 F.2d 525, 527-528 (8th Cir. 1971). See *Brush v. Ware,* 40 U.S. (15 Pet.) 93, 111 (1841).

These two principles, taken together, compel us to state the rule regarding the constitutional adequacy of notice as follows: where a party actually receives notice which would be constitutionally sufficient if the party were not under a disability, that notice is constitutionally sufficient as to a person actually under a disability if (1) it would put a reasonable person on notice that inquiry is required, (2) further inquiry would reveal the facts necessary to understand the nature of the proceeding and the opportunity to be heard, and (3) the party's disability does not render him incapable of understanding the need for such inquiry.[5]

---

[5] *Covey v. Somers,* 351 U.S. 141 (1956), is not inconsistent with this rule. In that case, the party receiving the notice was known to

Applying this rule to the instant cases, we believe that in-hand service of an official order by a constable was sufficient to put a reasonable person on notice that the order was important and, if not understood, required translation. Moreover, such translation would have provided the defendants with actual knowledge of the importance of the order and of their obligations thereunder. Finally, the nature of the defendants' disability, here the inability to read English, was not such as would render them incapable of understanding the need for further inquiry. Thus, we are of the opinion that the notice received by the defendants was constitutionally sufficient, and that bilingual notice was not constitutionally required.[6]

While we have found that the manner of notice employed in these cases is not constitutionally infirm, this does not, however, dispose of the question whether convictions for violation of the orders would likewise withstand constitutional scrutiny. We must address the further question whether, despite the adequacy of the

---

be incompetent by town officials. As a result, she was totally unable to understand the need for further inquiry. In the circumstances, she could not constitutionally be charged with the knowledge such inquiry would have provided.

[6] Whether the agency sending the notice knows, or has reason to know, that the recipient is not literate in English does not alter the rule as stated above. The law does not place a burden on government agencies to ascertain whether the recipient is able to read English, nor does it require that they communicate with those not literate in English in anything but the nation's official language, notwithstanding actual or constructive knowledge of such language deficiency. It might be appropriate and advisable for government agencies to give bilingual notice. It is our understanding that this is done in other contexts. See, e.g., Form DDA-CE 1 (April, 1974), of the Massachusetts Rehabilitation Commission; Administrators Letter 193, Department of Public Welfare (May 10, 1973). However, if such a burden on governmental function is desirable, it should be done by legislative action and with carefully delineated rules and guidelines. It is not appropriate for this court to enter so difficult and obscure an area without legislative mandate.

orders to vacate, there was fair warning to the defendants that failure to comply with the housing department's orders would result in criminal penalties.[7] We believe there was.

This is not a situation like *Lambert* v. *California,* 355 U.S. 225, 228 (1957), where a "person, wholly passive and unaware of any wrongdoing," was convicted for failing to register as a convicted felon. In *Lambert,* the defendant had no actual knowledge of the registration requirement, nor was any showing made that such knowledge was probable. Under the circumstances, the court found "the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it" violated due process. *Id.* at 229. This is not the case here, where defendants received adequate notice which, if translated, would have advised them that failure to obey the orders could lead to criminal penalties. Unlike *Lambert,* these are cases of "failure to act under circumstances that should [have] alert[ed] the doer to the consequences of his deed." *Id.* at 228. The defendants cannot rely on their failure to have the notice translated, and their resulting ignorance of the actual facts, to avoid criminal conviction. In these circumstances, "ignorance of the law will not excuse." *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U.S. 57, 68 (1910). Accord, *Williams* v. *North Carolina,* 325 U.S. 226, 238 (1945). Accordingly, the defendants' convictions for failure to comply with the housing department's orders do not violate the due process guaranty of the Fourteenth Amendment to the United States Constitution.[8]

---

[7] This is a different question from whether a statement notifying the defendants that failure to act would subject them to "penalties as provided by law" is sufficient to allow convictions for violations of the orders. That issue will be treated in part 4, *infra.*

[8] There is no argument here that the defendants' convictions are invalid as convictions for a "status" offense. The defendants were convicted for failing to obey a housing department order, and *not* for

b. *Equal Protection.*

The defendants argue that persons of Spanish descent are a suspect classification and that any governmental action affecting them as a class, even if nondiscriminatory on its face, must be measured against a compelling State interest standard. See, e.g., *Loving* v. *Virginia,* 338 U.S. 1, 11 (1967); *Korematsu* v. *United States,* 323 U.S. 214, 216 (1944). See generally Developments in the Law — Equal Protection, 82 Harv. L. Rev. 1065, 1087-1133 (1969). While we agree that, under certain circumstances, persons of Spanish descent *may* constitute a suspect classification, *Keyes* v. *School Dist. No. 1, Denver, Colo.,* 413 U.S. 189, 197-198 (1973); *Hernandez* v. *Texas,* 347 U.S. 475, 478-480 (1954), and that a statute neutral on its face may operate in a discriminatory manner, *Williams* v. *Illinois,* 399 U.S. 235, 242 (1970); *Griffin* v. *Illinois,* 351 U.S. 12, 17 n.11 (1956); *Castro* v. *Beecher,* 459 F.2d 725, 730 (1st Cir. 1972), we do not believe that either principle is controlling here.

While on its face, the policy of sending all notices in English treats all alike, in fact it does place an extra burden, having the notice translated, on those not literate in English. The class burdened, however, is not those of Spanish descent, but those unable to read English. This is not a suspect class. Thus, the proper question is whether the governmental action here is reasonable and is rationally related to a permissible end. See, e.g., *Reed* v. *Reed,* 404 U. S. 71, 76 (1971); *McDonald* v. *Election Com'rs of Chicago,* 394 U. S. 802, 809 (1969); *F.S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920). We believe it is.

"English is the language of this country. This conception is fundamental in the administration of all public affairs." *Conners* v. *Lowell,* 209 Mass. 111, 119 (1911).

---

their inability to read English. Compare these cases with *Powell* v. *Texas,* 392 U.S. 514 (1968), and *Robinson* v. *California,* 370 U.S. 660 (1962).

Accord, *Carmona* v. *Sheffield,* 325 F. Supp. 1341, 1342 (N.D. Cal. 1971), aff'd 475 F.2d 738 (9th Cir. 1973). This is not an officially multilingual country, and notification of official matters in the sole official language of both this nation and this Commonwealth is patently reasonable.[9] See *Carmona* v. *Sheffield,* 475 F.2d at 739. See also *Guerrero* v. *Carleson,* 9 Cal. 3d 808, 812-813 (1973), cert. denied sub nom. *Guerrero* v. *Swoap,* 414 U.S. 1137 (1974). Accordingly, it would not be a violation of equal protection to provide those not literate in English with English-only notice.

Neither would it be a violation of equal protection to convict one not literate in English for failure to comply with an English-only notice in the circumstances of these cases. Liability for criminal penalties applies equally to all who violate housing department orders. There has been no showing of discriminatory application of the criminal sanction.

In light of what we have said regarding both due process and equal protection guaranties, we answer the second question, "No."

4. The third question asks whether it is constitutionally sufficient, in order to issue a criminal complaint, to have notified the potential defendant only that failure to abide by a housing department order will result in "penalties as provided by law." We believe it is.

The defendants concede that this question was answered affirmatively in *Commonwealth* v. *Collins,* 257 Mass. 580 (1926). While we did not specifically consider the due process contention in that case, we did uphold a criminal conviction where the notice stated, "failure to abate this nuisance will render you liable to the penalties

---

[9] In having held that the applicable standard is one of reasonableness, we need not consider whether the burdens alleged by the Commonwealth — difficulty in identifying those to whom bilingual notice should be sent, increased cost and need for providing similar services to other language groups — would be sufficient to meet a stricter standard of review.

provided by law, without further notice." *Id.* at 582. In the instant cases, the language is essentially similar, except the latter phrase is omitted. We do not find this omission constitutionally significant.

We hold that the phrase "penalties as provided by law," when used in the context of the instant cases, is sufficient to put a potential defendant on notice that those penalties may include criminal sanction. Accordingly, we answer the third question, "Yes."

5. The cases are remanded to the Housing Court of the County of Hampden for disposition.

*So ordered.*