## A98A0226. SISSON v. THE STATE.
(499 SE2d 422)

McMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of driving under the influence of alcohol ("DUI") in violation of OCGA § 40-6-391 (a) (1) (less safe driver) and no proof of insurance. The evidence at trial revealed that on the night in question, defendant quarreled with his girl friend, Pam Mullins. Defendant had come home "intoxicated enough for [the couple] to have an argument." When Mullins tried to call 911, defendant "jerked the phone out of [her] hands, threw it on the floor and broke it." From a pay phone, Mullins telephoned the police and told them she and defendant "are fighting and he's drunk, and he's driving a red Mazda truck and he was going to his mother's in Rockmart. . . . Going down Bankhead Highway, [Officer John H. Tumey of the Cobb County Police Department] picked up on a red Mazda pickup truck that was headed . . . toward the direction of Rockmart. . . . [Officer Tumey observed] an older male driving [and] a younger male in the passenger's seat." Officer Tumey initiated a traffic stop and "asked the driver for his license and insurance card." Defendant "kept fumbling around for about a

minute trying to give [the officer] his license. . . . He [defendant] was going through his wallet, then going through his dash, then flipping through the truck seat, then back to his wallet. . . . [Defendant finally located his documents] in his wallet." Officer Tumey "could smell an odor of an alcoholic beverage about [defendant]. . . . [Defendant] eventually gave [Officer Tumey] his license [but] never could produce an insurance card. . . . When [defendant] stepped out of his truck, he kind of staggered and swayed and he grabbed the side of his truck to hold himself up. . . . [Defendant] continued to walk down the bed side of the truck using the truck to hold his balance to hold him up." An alco-sensor tested positive for alcohol. "After [Officer Tumey] administer[ed] that test, [defendant] made a comment . . . that he did have a few beers. . . ." Defendant was unable to touch the tip of his nose with his right and left index fingers. Defendant informed Officer Tumey "that he did not know his ABCs to do the ABC test[, so they] went ahead and passed that test on by. . . . [When] asked . . . for the date and the time[, defendant got the day of the week correct but] was off about 52 minutes . . ." as to the lateness of the hour. Defendant's "eyes were bloodshot and watery. . . . [H]is breath was strong of an alcoholic beverage, and his speech was slurred."

At that point, defendant was placed under arrest and read his implied consent warnings. Mullins came to the scene and took custody of defendant's 14-year-old son. When Officer Tumey attempted to administer a breath test at the precinct, he admonished defendant "to take a deep breath, seal his lips around the mouthpiece and continue to blow approximately four to eight seconds until the machine quits giving a tone. . . . [But defendant only] blew one to two seconds, just a quick little blow. [Officer Tumey then] instructed [defendant] that he need[ed] to blow until [the officer told] him to stop. . . . [Defendant] then again blew . . . two seconds, just kind of a quick breath. That was it." They "did this approximately four times, and all four times he [defendant] would just give a quick, little short breath. . . ." Officer Tumey "offered [defendant] the test again for his benefit of the doubt [but defendant] refused to take the test again. . . ." Officer Tumey again read defendant his implied consent warnings and "offered him a test of his blood for his benefit of the doubt. He refused that test as well." Based on Officer Tumey's training and experience, and his observation of defendant's mannerisms and demeanor, he was of the opinion that defendant "was a less safe driver. . . ." Deputy Earl Head of the Carroll County Sheriff's Office and formerly with the traffic unit of the City of Rockmart Police Department related the circumstances of defendant's July 16, 1994 arrest and subsequent conviction for "DUI [in the] Recorders Court — Rockmart[, Polk County, Georgia]." Defendant's blood alcohol con-

centration was "13 grams [sic] at 16:22 hours."

The jury found defendant guilty as charged on each count. Defendant's direct appeal to the Supreme Court of Georgia was determined to "involve the application and not the construction and interpretation of the Georgia Constitution, [and so] this case [was] transferred to the Court of Appeals." *Held*:

1. Defendant first contends he was denied equal protection under Art. I, Sec. I, Par. II of the 1983 Georgia Constitution, arguing that "[p]ursuant to OCGA § 24-9-103 [(b) (1) and (2)], hearing impaired persons are given preferential treatment [because] the law provides that no evidence can be obtained from hearing impaired persons, during the first hour following an arrest, without the presence of an interpreter." Since defendant is not hearing impaired, he claims he is unfairly subject to roadside questioning about the state of his sobriety during "a critical period during which time people arrested for DUI may reduce the quantity of alcohol in the body to a level below the DUI threshold." The trial court concluded "the State can and does make exceptions to compensate for people who are suffering under handicaps. . . ."

(a) "There are three standards generally accepted for determining constitutionality under the Equal Protection Provisions of both the U. S. and [Georgia] Constitutions: (1) The rational relationship test; (2) The intermediate level of scrutiny; and (3) The strict judicial scrutiny standard." (Citation and punctuation omitted.) *McDaniel v. Thomas*, 248 Ga. 632, 638 (III) (285 SE2d 156). DUI suspects who are not themselves hearing impaired do not constitute a suspect classification nor do they implicate a fundamental right for equal protection analysis such as to implicate strict scrutiny. Nor does such classification invoke the intermediate scrutiny of gender-based classifications. Consequently, the standard of review is the rational basis standard.

(b) "Under this analysis, . . . statutory classifications are presumed valid and will survive an equal protection challenge if the classification bears a rational relationship to a legitimate government interest. *McDaniel*, 248 Ga. at 638-639[, supra]. The claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment. [Cit.]" *Henry v. State*, 263 Ga. 417, 418 (434 SE2d 469).

In our view, defendant cannot meet either prong of this test. He conceded he "has perfectly good hearing," and so he is not similarly situated to hearing-impaired DUI suspects who, in the absence of a translator, are not interrogated or read their implied consent warnings for up to one hour. Secondly, "[t]he intent of OCGA § 24-9-101 et seq. is to provide qualified interpreters to convey to hearing impaired [drivers] their implied consent warnings and rights before any ques-

tioning. . . . OCGA § 24-9-103 (b)." *Allen v. State*, 218 Ga. App. 844, 846 (1), 847 (463 SE2d 522). In the case sub judice, defendant failed to meet his burden to show the procedure whereby criminal suspects who are hearing impaired are not interrogated for up to one hour except in the presence of a translator is arbitrary or otherwise not rationally related to a legitimate state interest. See *Gaines v. State*, 260 Ga. 267, 268 (392 SE2d 524).

2. Next, defendant contends he was denied the right to confront his accuser, as guaranteed by the Sixth Amendment to the U. S. Constitution and Art. I, Sec. I, Par. XIV of the 1983 Georgia Constitution. In this regard, he complains of the admission into evidence of State's Exhibit 1, which is the Georgia Bureau of Investigation Certificate of Inspection for "breath testing instrument, [serial number] 68-001337." Attached to this certificate are printouts purporting to be the test results from the inspection as performed by Trooper R. M. Webb, the signatory to the certificate. Defendant argues "the test results should not have been tendered in the trial as evidence along with the certificate required by OCGA § 40-6-392 (f)."

At trial, defendant interposed objections based on hearsay, denial of cross-examination of Trooper Webb, and best evidence. Officer Tumey was then permitted to offer foundation evidence. He testified he knew R. M. Webb is a state trooper; that Trooper Webb is the implied consent area supervisor whose duty it is to "go around to all of our Intox machines and to inspect them and calibrate them and make sure they are working properly"; that "Trooper Webb run[s] a test on the machine when he inspects it quarterly[; and that] he [ran] a test on the machine when he inspected it on January 2nd, 1996." Officer Tumey identified the attachments to the inspection certificate as "[a] printout of the machine and the test that Trooper Webb ran on it."

In our view, this was an adequate foundation to admit the printouts as business records under OCGA § 24-3-14 (b), in that it was in the regular course of Trooper Webb's business to perform such a test, and these printouts were the result of one of those tests conducted in the regular course of Trooper Webb's duties. Consequently, "there [was] no violation of defendant's right of confrontation. [Cit.]" *Stewart v. State*, 246 Ga. 70, 73 (3), 74, n. 2 (268 SE2d 906).

3. In the third enumeration, defendant contends the trial court erred in admitting evidence of a prior incident of driving under the influence of alcohol. Relying on *Old Chief v. United States*, 519 U. S. ___ (117 SC ___, 136 LE2d 574),[1] he argues that proof of the nature of

---

[1] Since the prior DUI in the case sub judice was relevant only as similar transaction evidence and not for impeachment, it is the circumstance of driving with an unlawful blood alcohol concentration rather than any conviction that is logically connected to the subse-

his previous DUI was more prejudicial than probative and was erroneously admitted over objection because he offered to stipulate that he was a misdemeanant. We do not agree.

In *Old Chief*, that defendant was charged with a violation of 18 USC § 922 (g) (1), which forbids possession of a firearm by anyone convicted in any court of a crime punishable by imprisonment for a term exceeding one year. He offered to stipulate he had been convicted of such an offense (assault causing serious bodily injury), but moved to exclude reference to the name and violent nature of the actual prior offense. The district court admitted the unredacted judgment of conviction, disclosing that defendant Old Chief " 'did knowingly and unlawfully assault Roy Dean Fenner, said assault resulting in serious bodily injury,' for which Old Chief was sentenced to five years' imprisonment." 136 LE2d 574, 584 (I) at 586. The Ninth Circuit had ruled that "a stipulation is not proof, and, thus, it has no place in the [Federal Rules of Evidence] 403 balancing process. [Cit.]" Id. The Supreme Court of the United States reversed and remanded, holding that Rule 403 of the Federal Rules of Evidence requires the relative probative value of prior conviction evidence be balanced against its prejudicial risk of misuse, and if an alternative method of proof (such as an admission against interest) had substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk. Id. at 589 (II) (B) (1). Consequently, the trial court in that case abused its discretion in admitting the record of conviction when an admission of defendant's status as a convicted felon was available. Id. at 595 (II) (B) (4).

(a) Thus, in *Old Chief*, that defendant's proposed stipulation amounted to an admission against his penal interest because it established an element of the subsequently charged crime. Our Supreme Court has recently reached the same result as *Old Chief* (independent of that decision's analysis) with respect to a charge of possession of a firearm by a convicted felon. *Robinson v. State*, 263 Ga. 424, 425 (2) (b) (435 SE2d 207). In the case sub judice, however, defendant's proposed stipulation that he is a misdemeanant for an undisclosed offense does not in any way establish any element of the

---

quently charged crime. "It is not essential for admissibility that the similar crime resulted in a conviction. [Cits.]" *Green v. State*, 178 Ga. App. 203 (2), 204 (342 SE2d 386). This case does not present the question whether, over defendant's best evidence objection, a prior DUI conviction can be established for similar transaction purposes by a driving record as printed from a computer connected to the Georgia Crime Information Center, admissible per OCGA § 24-3-17 (b). Compare *Johnson v. State*, 48 Ga. 116, hn. 3.

alleged violation of OCGA § 40-6-391 (a) (4). Rather, it is the fact of his previous incident of driving with a blood alcohol level of .13 grams percent (versus any conviction therefor) which tends to establish guilty knowledge and to rebut any claim of accidental intoxication in the subsequent offense.

(b) Moreover, the interpretation of Rule 403 of the Federal Rules of Evidence by the Supreme Court of the United States simply is not any precedent binding on this Court regarding the admissibility of similar crimes or extrinsic acts evidence.

In Georgia, the admission of evidence, including questions of relevancy, is a matter committed to the sound legal discretion of the trial court. *Baker v. State*, 246 Ga. 317, 318 (3), 319 (271 SE2d 360). "As said by Mr. Wigmore (4 Wig. Ev. 20 ed., 73, § 1904): 'Circumstantial evidence, concededly relevant, may nevertheless be excluded by reason of the general principle that the probative usefulness of the evidence is more than counterbalanced by its disadvantageous effects in confusing the issues before the jury, or in creating an undue prejudice in excess of its legitimate probative weight.' " *Candler v. Byfield*, 160 Ga. 732, 738 (2), 739 (129 SE 57). See also *Kicklighter v. Woodward*, 267 Ga. 157, 160 (4), 161 (476 SE2d 248). "The general rule is that evidence of an independent crime is never admissible unless the prejudice it creates is outweighed by its relevancy to the issues on trial. See *Cawthon v. State*, 119 Ga. 395, 408 [(4-6)] (46 SE 897) (1903)." *Hicks v. State*, 232 Ga. 393, 397 (207 SE2d 30). But the determination that extrinsic acts evidence is more probative than prejudicial is implicit in the trial court's determination that such evidence is substantially relevant for an appropriate purpose. *Humphrey v. State*, 218 Ga. App. 574, 576 (2) (462 SE2d 641). The Supreme Court of Georgia has ruled that the calculus of whether relevant and admissible similar crimes evidence should nevertheless be excluded as more prejudicial than probative need not be an express determination on the record. *Farley v. State*, 265 Ga. 622 (2), 625 (458 SE2d 643).

In the case sub judice, we find no error in the trial court's implicit determination that defendant's prior DUI was more probative than prejudicial. "Evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the perpetrator has the bent of mind to get behind the wheel of a vehicle when [it is] less safe for him to do so." (Citations and punctuation omitted.) *McCullough v. State*, 230 Ga. App. 98, 99 (1), 100 (495 SE2d 338).

4. In his fourth enumeration, defendant contends he was denied his rights under Art. I, Sec. I, Par. XVI of the 1983 Georgia Constitution, which provides: "No person shall be compelled to give testimony

tending in any manner to be self-incriminating." He argues "that Miranda rights [*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)] apply immediately after arrest and before the reading of Implied Consent warnings."

Under Georgia law, *Miranda* warnings must precede a request to perform a field sobriety test only when the suspect is "in custody." *Price v. State*, 269 Ga. 222, 224 (3) (498 SE2d 262); *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313); *Montgomery v. State*, 174 Ga. App. 95 (1) (329 SE2d 166). The test of "in custody" is whether a reasonable person in the suspect's position would have thought the detention would not be temporary. *Price v. State*, 269 Ga. 222, 224 (3), supra.

"For the proscriptions of *Miranda v. Arizona*, [supra,] to apply, 'a person must have been taken into custody or otherwise deprived of his freedom of action in some significant way.' *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799). 'In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there (was) a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (Cits.)' *Stansbury v. California*, 511 U. S. 318, 322 (114 SC 1526, 128 LE2d 293). Since it is undisputed that defendant in the case sub judice had not been formally arrested at the time [Officer Tumey asked defendant to perform field sobriety tests or to submit to a breath test], the proper inquiry becomes whether he had been 'restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest. (Cits.)' *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16)." *McConville v. State*, 228 Ga. App. 463, 464 (1), 465 (491 SE2d 900).

In our view, defendant was not in the custody of the police as that phrase has been construed. *Trudewind v. State*, 224 Ga. App. 223 (1) (480 SE2d 211). Nor was he compelled by force or threats to perform roadside field sobriety tests in violation of his right against self-incrimination as guaranteed by Art. I, Sec. I, Par. XVI of the 1983 Georgia Constitution and OCGA § 24-9-20. "Thus, any recitation of individual rights guaranteed by the federal and [Georgia] constitutions was not necessary at the time [defendant] was requested to perform the field sobriety test[s]." *Montgomery v. State*, 174 Ga. App. 95 (1), 96, supra.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED APRIL 1, 1998 —
RECONSIDERATION DENIED APRIL 3, 1998.

*J. Guy Sharpe, Jr.*, for appellant.

68

*Barry E. Morgan, Solicitor, Lawton W. Scott, Assistant Solicitor,* for appellee.