## S00A0503. KLINK v. THE STATE.
## S00A0874. WATT v. THE STATE.
### (533 SE2d 92)

BENHAM, Chief Justice.

At issue in both of these appeals is the constitutionality of OCGA § 40-5-67.1, that provides for notice of implied consent to chemical testing for those suspected of driving under the influence of alcohol.

### Case No. S00A0503

Appellant Klink was involved in an automobile accident when he allowed his vehicle to cross the centerline and strike an oncoming vehicle head on. The officer who investigated the accident observed that Klink smelled of alcohol. Klink stated that he had consumed five vodka tonics. After subjecting Klink to a series of field sobriety tests, the officer concluded that Klink was under the influence of alcohol and placed him under arrest for DUI. The officer read Klink an appropriate implied consent notice regarding chemical testing as mandated by OCGA § 40-5-67.1. Klink consented to a state administered blood test which determined that his blood alcohol level exceeded that allowed by law.

At trial, Klink objected to the admission of the blood test results, alleging that the implied consent notice read to him pursuant to OCGA § 40-5-67.1 is unconstitutional. The trial court overruled Klink's objection and allowed the test results into evidence. Klink was convicted of DUI after a bench trial and given a twelve-month sentence with one day to be served in jail and the remainder on probation.

### Case No. S00A0874

Appellant Watt was found by police in his automobile, which was stopped in the center turn lane with its brake lights on and engine running. Watt was in the driver's seat with his head tilted back. The officers were able to wake Watt after much difficulty. Watt had great difficulty complying with simple requests made by the officers and was unable to perform all of the tasks required for the field sobriety tests the officers administered. He was arrested and read an appropriate implied consent notice regarding chemical testing, pursuant to OCGA § 40-5-67.1. Watt agreed to take a breath test and his blood alcohol was found to be 0.092 percent approximately three hours after he was found by police. The state charged Watt with driving under the influence of alcohol. Watt moved to exclude the results of his breath test, alleging that the implied consent notice read to him pursuant to OCGA § 40-5-67.1 is unconstitutional and that the state was required to show that Watt had been observed for 20 minutes

before the test was conducted in order to admit the results of the breath test. The trial court found Watt guilty of DUI after a bench trial.

1. Both Klink and Watt contend it was error for the trial courts to uphold the constitutionality of OCGA § 40-5-67.1. They argue the implied consent notice given to them pursuant to the statute violates due process because it is incomplete, misleading and coercive in that suspects are advised that a refusal to submit to a test will result in a one-year suspension, but are told that if they agree to take a test, there is only a possibility that their driver's licenses might be suspended if their blood alcohol concentration proves to be 0.10 grams or more. Further, Klink and Watt argue that the notice is incomplete, misleading and coercive because suspects are warned that a refusal to submit to testing may be used against them at trial, but are not told that test results may be used against them at trial.

It is clear that the Georgia Constitution does not protect citizens from compelled blood testing or from the use of the results of compelled blood testing at trial. *Allen v. State*, 254 Ga. 433 (1) (330 SE2d 588) (1985). Nor is compelling a defendant to submit to breath testing unconstitutional under Georgia law. *Green v. State*, 260 Ga. 625 (398 SE2d 360) (1990) ("[T]he use of a substance naturally excreted by the human body does not violate a defendant's right against self-incrimination under the Georgia Constitution."). The right to refuse to submit to state administered testing is not a constitutional right, but one created by the legislature. Id. The choice provided by the statute at question is not coercive because it is not "so painful, dangerous, or severe, or so violative of religious beliefs" that no real choice exists. *South Dakota v. Neville*, 459 U. S. 553, 563 (103 SC 916, 74 LE2d 748) (1983). Nor do we conclude that the statute is so misleading or incomplete that no real choice exists. This is not a case where the legislature has "subtly coerced [a defendant] into choosing the option it had no right to compel, rather than offering a true choice." Id. at 563; *Wessels v. State*, 169 Ga. App. 246 (1) (312 SE2d 361) (1983). The Georgia Constitution allows the state to compel blood and breath testing without warning that the results may be used against a defendant at trial. *Allen*, supra; *Green*, supra. "Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice." *Neville*, supra. As we stated in *Allen*, "The legislature grants the right and determines its nature. By limiting the right in its creation, the legislature has not negated the right." *Allen*, supra.

Klink and Watt also argue that the legislature's inclusion of a warning in the implied consent notices given to boaters suspected of boating under the influence of alcohol pursuant to OCGA § 52-7-12.5

that test results may be used against suspects at trial shows that the legislature recognized that not including such a warning would violate due process. OCGA § 52-7-12.5 is similar to OCGA § 40-5-67.1, except for inclusion of the additional warning, and was enacted after OCGA § 40-5-67.1. However, there is no evidence that the legislature added the language to OCGA § 52-7-12.5 because it perceived a potential violation of due process. Thus, the trial courts did not err in upholding the constitutionality of the statute on that ground.

2. Watt argues that his breath test results should not have been admitted into evidence because the foundational requirements for admission of chemical tests have not been met since the manufacturer's suggestions regarding observing a suspect for 20 minutes before performing a breath test were not followed. Watt maintains that the manufacturer of the Intoxilyzer 5000 suggests that a suspect be observed for 20 minutes before performing a breath test in order to avoid invalid results. Specifically, Watt notes OCGA § 40-6-392 requires that the test be conducted in accordance with "methods approved by the Division of Forensic Sciences (DFS) of the Georgia Bureau of Investigation." Watt relies on testimony from the officer who conducted the breath test to establish that the 20-minute observation requirement is indeed a "method approved" by DFS.

We need not determine at this point whether the 20-minute observation requirement is a "method approved" by DFS because Watt was in custody for well over 20 minutes before being tested. *Berkow v. State*, 243 Ga. App. 698 (534 SE2d 433) (2000); *Stinson v. State*, 203 Ga. App. 225 (3) (416 SE2d 765) (1992). Thus, even if we were to assume that DFS approved a 20-minute observation period as part of the testing method, the trial court's ruling should not be overturned because the state complied with this requirement.[1] Id.

Watt cites *Casey v. State*, 240 Ga. App. 329 (523 SE2d 395) (1999), in support of his argument that the state must observe a suspect for 20 minutes before proceeding with testing. However, *Casey* is distinguishable because in that case, the court dealt with the circumstance where authorities did not wait 20 minutes before retesting a

---

[1] Watt notes that DFS was exempted from the requirements of the Administrative Procedure Act (APA) with respect to approval of testing methods for blood alcohol concentration in support of his argument that the testimony of an officer that administered the breath test established that allowing 20 minutes to observe a suspect before conducting the test is a method approved by DFS. Appellant relies heavily on this Court's ruling in *Price v. State*, 269 Ga. 222 (4) (498 SE2d 262) (1998), in which we recognized that DFS was no longer subject to the APA. However, *Price* is not applicable to the instant case because in *Price*, a defendant challenged the admission of breath test results because DFS had not administratively approved the use of the gas chromatograph or methods for operating and maintaining the machine. Watt misconstrues the holding of *Price* to mean that due to the lack of administrative formalities to which DFS is subjected, a defendant can establish through testimony at trial what methods DFS has approved.

suspect after the machine indicated the presence of residual mouth alcohol. There is no evidence that suggests that residual mouth alcohol was present at the time Watt took the breath test or that he took any other action that would have yielded an invalid result.

For the reasons stated above the rulings of the trial courts are affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 10, 2000.

*Robert W. Chestney*, for appellant.

*Gwendolyn R. Keyes, Solicitor, Yolanda K. Johnson, Thomas E. Csider, Assistant Solicitors,* for appellee.

*Joseph J. Drolet, Gerald N. Blaney, Jr., Solicitors, Katherine Diamandis, Gary S. Vey, Staci B. Abrahms, Assistant Solicitors,* amici curiae.

*Robert W. Chestney*, for appellant.

*Carmen D. Smith, Solicitor, Jody L. Peskin, Kathleen A. Giroux, Assistant Solicitors,* for appellee.