S01A0375. LUTZ v. THE STATE.
(548 SE2d 323)

SEARS, Justice.

Appellant James Stephen Lutz appeals from his conviction for driving under the influence of alcohol. As explained below, we conclude that the implied consent warnings given to appellant in conjunction with a chemical breath test to determine his level of intoxication were constitutionally sound. We also conclude that appellant's rights of equal protection were not violated in connection with his arrest and prosecution for DUI, and that the police roadblock at which appellant was arrested was reasonable. Therefore, we affirm.

In December 1999, appellant and his wife were driving eastbound on Ronald Reagan Parkway in Gwinnett County at approxi-

---

mately 2:00 a.m., when they encountered a police roadblock. After determining that appellant appeared to be under the influence of alcohol, police officers placed him under arrest and read him the Georgia implied consent warnings mandated by OCGA § 40-5-67.1. After consenting, appellant was administered a chemical breath test, which determined that his blood alcohol level exceeded that permitted by law.

Appellant was charged with DUI. Before his trial, appellant moved to suppress from evidence the results of his chemical breath test on the grounds that (1) he did not submit to the breath test for the purpose of its results being used against him in a criminal proceeding; (2) Georgia's implied consent statute denies a person arrested for driving under the influence of alcohol equal protection under the law; and (3) the roadblock at issue in this matter was not reasonable. The trial court denied appellant's suppression motion, and following a bench trial, he was convicted of DUI.

1. Appellant argues that the trial court erred by denying his motion to suppress the results of his chemical breath test, because he consented to the test only insofar as the evidence collected could be used against him in an administrative hearing to suspend his license. In support of this argument, appellant points to OCGA § 40-5-67.1 ("the implied consent statute"), which requires police to inform motorists that if chemical testing of their blood, breath or urine reveals an alcohol concentration level of .10 grams or more, their driver's license may be suspended for a minimum of one year.[1] The implied consent statute informs motorists that they may decline to submit to chemical testing, in which case their license will be suspended for a minimum of one year, and also informs motorists that the refusal to submit to chemical testing may be introduced against them at trial.[2] The implied consent notice, however, does not inform motorists that the results of chemical testing may be introduced against them in a criminal DUI prosecution.[3]

Appellant correctly points out that because chemical testing of an individual's blood, breath or urine implicates Fourth Amendment rights, any consent thereto must be made knowingly and voluntarily.[4] Appellant argues that since the statutorily-prescribed implied consent warnings given to him in conjunction with his chemical breath test did not inform him that his test results might be used against him at a criminal trial, he did not consent to the test for that

---

[1] OCGA § 40-5-67.1 (b) (2).
[2] Id.
[3] Id.
[4] See *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *State v. Johnston*, 249 Ga. 413 (291 SE2d 543) (1982).

purpose, and hence the test results were inadmissible at his DUI trial.

As recently reiterated by the Court in *Klink v. State*, "the Georgia Constitution does not protect citizens from compelled blood testing *or from the use of compelled blood testing at trial*."[5] Police officers in Georgia are permitted to administer bodily alcohol concentration tests to motorists in order to determine whether they are driving under the influence of alcohol or drugs without first warning that the results of such tests may be used in a criminal trial for DUI.[6]

Furthermore, the results of chemical testing administered in conjunction with Georgia's implied consent warnings are admissible in a criminal prosecution for DUI.[7] Merely because the warnings set forth in the implied consent statute inform motorists that their refusal to submit to a bodily alcohol concentration test may result in a driver's license suspension and may also be introduced against them at trial, it does not follow that the warnings are defective for failing to inform motorists that the State is permitted to use alcohol concentration test results in a DUI prosecution.[8] Accordingly, we reject appellant's claim that the use of his chemical test results at his prosecution for DUI violated his rights under the Fourth Amendment.

2. Appellant contends that the trial court erred in denying his motion to suppress because Georgia's implied consent statute violates the dictates of equal protection set forth in our Georgia and Federal Constitutions.[9] Appellant claims that the implied consent statute mandates that a person arrested for driving under the influence of alcohol will suffer the automatic administrative suspension of his driver's license before being tried for DUI, while a similarly situated person who drives under the influence of other, illegal drugs will not have his license suspended before being convicted of DUI at trial. Appellant claims that this disparate treatment of persons who drive under the influence of alcohol and persons who drive under the influence of illegal drugs bears no rational relationship to the purpose of DUI laws – i.e., traffic safety – and thus renders the implied consent statute violative of equal protection.

A close reading of the statute, however, reveals that it treats impaired drivers equally, and does not classify them according to the substance that caused their inebriation. Under subsections (c) and (d) of the implied consent statute, an individual will automatically

---

[5] (Emphasis supplied.) 272 Ga. 605, 606 (533 SE2d 92) (2000).

[6] Id.

[7] Id. at 606-607.

[8] Id. at 606.

[9] U. S. Const., Amend. XIV; Ga. Const., Art. I, Sec. I, Par. II.

suffer the administrative suspension of his driver's license for at least one year when he is placed under arrest for DUI and either: (1) refuses to submit to testing for the purpose of determining whether he is under the influence of *alcohol or other drugs*;[10] **or** (2) submits to such testing, and such testing reveals that: (a) the individual has a bodily alcohol concentration level of .10 grams or more;[11] **or** (b) the individual has violated OCGA § 40-6-391 by driving or being in physical control of a moving vehicle while under the influence of *alcohol or any drug, glue, aerosol, or other toxic vapor to the extent that it is less safe for that individual to drive.*[12] In all of these instances, the administrative suspension of a driver's license is authorized upon the sworn report of a law enforcement officer, and does not require that the individual whose license is suspended be prosecuted for DUI.[13] Thus, contrary to appellant's argument, the implied consent statute does not provide different administrative penalties for people who drive under the influence of alcohol than it provides for people who drive under the influence of other, illegal drugs. Both groups of impaired drivers are subject to having their licenses suspended administratively without having been prosecuted for DUI. Therefore, appellant's equal protection challenge is rejected.

3. The record supports the trial court's determination that the police roadblock at which appellant was arrested was reasonable in light of the factors recently described by this Court in *LaFontaine v. State*.[14] The record reveals that the roadblock was established for the proper purpose of examining the driver's licenses and proof of insurance of all vehicles traveling eastbound on Ronald Reagan Parkway, as well as to check for other violations of Georgia law.[15] The decision of where and when to place the roadblock was made by supervisory personnel rather than field officers, and all vehicles coming through the roadblock were stopped.[16] The delays to motorists stopped at the roadblock appear to have been minimal, and the roadblock was clearly identified to approaching traffic by at least five police cars flashing their blue lights, by police officers who wore reflective vests and carried flashlights, by cones set up in the roadway, and by signs identifying a safety checkpoint.[17] Finally, the officers were trained and experienced in making an initial determination as to which

---

[10] OCGA § 40-5-67.1 (d).
[11] OCGA § 40-5-67.1 (c).
[12] Id.
[13] OCGA § 40-5-67.1 (c) and (d).
[14] 269 Ga. 251, 252-253 (497 SE2d 367) (1998).
[15] Id.
[16] Id.
[17] Id.

motorists should be given field tests for intoxication.[18]
*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 11, 2001 —
RECONSIDERATION DENIED JULY 16, 2001.

*Monte K. Davis,* for appellant.
*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Staci B. Abrams, Assistant Solicitors-General, Thurbert E. Baker, Attorney General,* for appellee.