## S02A0412. RODRIGUEZ v. THE STATE.
(565 SE2d 458)

SEARS, Presiding Justice.

The appellant, Omar Rodriguez, who speaks Spanish and not English, appeals from his conviction for driving under the influence of alcohol. He contends, first, that the results of his blood-alcohol tests should have been suppressed because OCGA § 24-9-103, which provides that police officers must attempt to obtain a qualified interpreter to inform a hearing impaired person of his implied consent warnings, violates equal protection since it does not provide that an officer must attempt to obtain an interpreter for people who do not speak English. Rodriguez also contends that OCGA § 40-5-67.1[1] and

---

[1] OCGA § 40-5-67.1 (b) sets forth the implied consent notice that an officer must read to a person who has been arrested for driving in violation of OCGA § 40-6-391. For drivers over

§ 40-6-392 (a) (3),[2] as interpreted in *State v. Tosar*,[3] violate equal protection since non-English-speaking defendants, unlike English-speaking defendants, do not have their implied consent notice read to them in a language that they can understand. Finally, Rodriguez contends that due process requires that a driver be read his implied consent notice in his native language so that he is meaningfully advised of the rights and can exercise those rights in a meaningful fashion. For the reasons that follow, we conclude that these contentions are without merit, and we therefore affirm Rodriguez's conviction.

1. OCGA § 24-9-103 provides that when an officer takes a hearing impaired person into custody, the officer must request a qualified interpreter to assist the hearing impaired person, and that "[n]o interrogation, warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided."[4] If an interpreter is not available within one hour, the officer may then question and take a statement from the hearing impaired person.[5] This statute applies to hearing impaired persons arrested for driving under the influence and thus requires the officer to attempt to find an interpreter to convey the appropriate implied consent warning to the hearing impaired person through an interpreter.[6] As Rodriquez correctly points out, the statute provides for no such accommodation for non-English-speaking persons arrested for DUI. We conclude, however, that the disparate treatment does not violate equal protection.

"The Georgia and U. S. Constitutions require government to treat similarly situated individuals in a similar manner."[7] The person who is asserting the equal protection claim has the burden to establish that " 'he is similarly situated to members of the class who are treated differently from him.' "[8] If the person asserting the violation

---

the age of 21, the officer, among other things, must inform the driver that Georgia law requires him to submit to a state-administered test to determine if the driver is under the influence of alcohol or drugs; that if the driver refuses the testing, the refusal will result in a one-year suspension of his driver's license; that the refusal may be offered into evidence against the driver at a trial; and that the driver is entitled to additional testing at his own expense from an expert of his own choice.

[2] OCGA § 40-6-392 (a) (3) provides, in relevant part, as follows: "The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer."

[3] 180 Ga. App. 885 (350 SE2d 811) (1986).

[4] OCGA § 24-9-103 (b) (1).

[5] OCGA § 24-9-103 (b) (2).

[6] *Allen v. State*, 218 Ga. App. 844 (463 SE2d 522) (1995).

[7] *Old South Duck Tours v. Mayor &c. of Savannah*, 272 Ga. 869, 873 (535 SE2d 751) (2000).

[8] *Farley v. State*, 272 Ga. 432, 433 (531 SE2d 100) (2000), quoting *Reed v. State*, 264 Ga.

cannot make the foregoing showing, "there is no need to continue with an equal protection analysis."[9]

In the present case, because hearing impaired persons physically cannot learn to understand an implied consent warning read to them in English, whereas non-English-speaking persons such as Rodriguez have no hearing disability and have the potential to understand such a warning, we conclude that Rodriguez is not similarly situated to a hearing impaired person.[10] Consequently, this equal protection claim is without merit.[11]

2. Rodriguez next contends that reading his implied consent rights to him in English and not in Spanish violated his right to equal protection, as an English-speaking defendant would have understood his rights whereas he did not. More specifically, Rodriguez contends that under OCGA § 40-5-67.1 and § 40-6-392 (a) (3), as interpreted in *State v. Tosar*,[12] a police officer is required to read a driver his implied consent rights only in English, that the statutes thus effectively classify drivers as English-speaking and non-English-speaking, and that the statutes treat non-English-speaking drivers differently than English-speaking drivers in that non-English-speaking drivers will not understand their implied consent rights.

In *State v. Tosar*, Tosar, as Rodriguez, could only speak Spanish and was read his implied consent rights in English. On appeal, the Court of Appeals rejected his contention that his intoximeter test results were inadmissible since he had not been informed of his implied consent rights in his native language. In so ruling, the Court of Appeals concluded that the implied consent statute only required the officer to advise the defendant of his implied consent warnings and did not require the officer to make sure that the defendant understood those rights.[13] The Court of Appeals also declined Tosar's suggestion to require the State to print the implied consent warnings in Spanish or in as many different languages as the Georgia driver's license examination is given.

Initially, we note that Rodriguez's contention that *Tosar* requires the implied consent rights be read only in English and thus creates a classification of English-speaking defendants and non-English-speaking defendants is problematic. First, the language of the relevant statutes[14] does not require that the implied consent rights be

---

466, 467 (448 SE2d 189) (1994).

[9] *Lowe v. State*, 267 Ga. 754 (1) (482 SE2d 344) (1997).

[10] See *Sisson v. State*, 232 Ga. App. 61, 63 (499 SE2d 422) (1998).

[11] Accord *Furcal-Peguero v. State*, 255 Ga. App. 729 (566 SE2d 320) (2002).

[12] 180 Ga. App. 885.

[13] *Tosar*, 180 Ga. App. at 887-888.

[14] OCGA §§ 40-5-67.1 and 40-6-392 (a) (3).

read only in English, and *Tosar* did not so hold. *Tosar*, instead, simply held that the Court of Appeals would not require an officer to read the rights to the defendant in his native language. Thus, a police department could require its officers to read the rights in other languages or an individual officer could do so on his own. The statutes thus, on their face, do not create a classification. They only require that the implied consent rights be read to defendants. When a statute does not create a classification on its face, it only violates equal protection when the defendant can show the law was enacted or applied with a discriminatory purpose.[15] Here, Rodriguez has made no such showing.[16]

However, we also find no merit to Rodriguez's equal protection claim even if we assume that the relevant statutes require that the implied consent warnings be read only in English and thus can be said to create a classification on its face of English-speaking drivers and non-English-speaking drivers. As previously noted in this opinion, a person asserting an equal protection claim has the burden to establish that " 'he is similarly situated to members of the class who are treated differently from him.' "[17] Because we conclude that English-speaking drivers and non-English-speaking drivers are similarly situated for purposes of the implied consent laws, and because we conclude that the reading of implied consent notice only in English may unintentionally disadvantage non-English-speaking drivers in comparison to English-speaking drivers, we must decide whether this different treatment is constitutional. In doing so, we must determine what level of scrutiny to apply to the different treatment. If the classification adversely impacts a suspect class or a fundamental right, we must test the classification under the standard of strict scrutiny.[18] If it does not, then the classification must be tested under the rational relationship test, which requires only that the classification bear a rational relationship to a legitimate state purpose.[19] Here, Rodriguez contends a suspect classification is involved because the implied consent laws discriminate on the basis of language and thus national origin. However, under equal protection

---

[15] *Stephens v. State*, 265 Ga. 356, 357-358 (456 SE2d 560) (1995); *Personnel Administrator of Mass. v. Feeney*, 442 U. S. 256, 272-273 (99 SC 2282, 60 LE2d 870) (1979).

[16] See *People v. Wegielnik*, 605 NE2d 487, 491-492 (Ill. 1992) (Illinois implied consent law, which was construed by the Court not to require that defendants be given implied consent warnings in their native language, did not violate equal protection, as the law was neutral on its face and as defendant did not show that the law was enacted with or applied to him with an intent to discriminate against non-English-speaking drivers).

[17] *Farley*, 272 Ga. at 433, quoting *Reed*, 264 Ga. at 467.

[18] *Kendrix v. Hollingsworth Concrete Products*, 274 Ga. 210 (553 SE2d 270) (2001); *Barnett v. State*, 270 Ga. 472 (510 SE2d 527) (1999); *Ambles v. State*, 259 Ga. 406, 407 (383 SE2d 555) (1989).

[19] Id.

analysis, a language classification by itself, particularly a broad English-speaking versus non-English-speaking one, generally is not equated with national origin or other suspect classification,[20] and we decline to so equate it in this case.

Testing the implied consent classification under the rational relationship standard, we readily conclude that the classification is constitutional. First, reading all drivers their implied consent rights in English will advise most people of their implied consent rights.[21] Second, requiring that officers advise drivers of the implied consent rights in their native language would impose severe administrative costs in that officers would have to be equipped to issue warnings in any and every language spoken by drivers in this State or would have to have access to an interpreter to issue the warnings. The logistics of such a requirement would be extremely problematic in a society as pluralistic and diverse as the United States. Third, the requirement urged by Rodriguez – that an interpreter be made available to read a non-English-speaking driver his rights – could lead to delay in obtaining the driver's blood-alcohol level, which dissipates over time, and thus would interfere with one of the purposes of the implied consent law.[22] In sum, these considerations are sufficient to provide a rational basis for requiring the implied consent warnings to be read only in English.

For the foregoing reasons, we conclude that this contention is without merit.[23]

3. Rodriguez next contends that due process requires that a driver be meaningfully advised of the implied consent rights so that he or she can exercise those rights in a meaningful fashion. Implied consent warnings, however, are a matter of legislative grace, and due

---

[20] See *Soberal-Perez v. Heckler*, 717 F2d 36, 41-43 (2nd Cir. 1983); *Commonwealth v. Olivo*, 337 NE2d 904, 910-911 (Mass. 1975); *Flores v. State*, 904 SW2d 129, 130 (Tex. Crim. App. 1995). See also *Pemberthy v. Beyer*, 19 F3d 857, 870-872 (3rd Cir. 1994).

[21] See *Wegielnik*, 605 NE2d at 490.

[22] See OCGA § 40-5-55 (a), which provides as follows:

The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. . . . The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities.

[23] Accord *Furcal-Peguero*, 255 Ga. App. 729.

process does not require that the warnings be given in a language that the driver understands.[24]

*Judgment affirmed. All the Justices concur.*

HUNSTEIN, Justice, concurring.

I concur in the majority's conclusion that police officers are not required by law to read the implied consent notice to drivers in a language other than English. In light of the growing international diversity of drivers in Georgia, however, I write specially to urge the legislature to consider requiring law enforcement agencies to provide their officers with written foreign-language versions of the implied consent rights and, perhaps, a phonetic representation of those foreign-language versions, so officers can make a good faith attempt to inform non-English-speaking drivers of these important rights.

DECIDED JUNE 24, 2002.

*Norman H. Cuadra, Lawrence J. Zimmerman, Jason J. Kesser,* for appellant.

*Gwendolyn R. Keyes, Solicitor-General, Akintunde A. Akinyele, Assistant Solicitor-General,* for appellee.

---

[24] See *Wegielnik,* 605 NE2d at 491 (due process does not require that an arresting officer warn a driver that the refusal to take a blood-alcohol test may be used against him at trial, and as "due process does not require that [such] warnings be given at all, it does not require that they be given in a language the defendant understands"); *South Dakota v. Neville,* 459 U. S. 553, 565 (103 SC 916, 74 LE2d 748) (1983) (admission at trial of driver's refusal to take blood-alcohol test did not violate due process even though driver not warned that refusal to take the test could be used as evidence against him, as right to refuse test was one of legislative grace and was not a right of constitutional dimension like the right to silence underlying *Miranda*). See also *Allen v. State,* 254 Ga. 433, 434 (330 SE2d 588) (1985) ("[i]n Georgia, the state may constitutionally take a blood sample from a defendant without his consent"); *Lutz v. State,* 274 Ga. 71, 73 (548 SE2d 323) (2001) (arresting officer not required by Fourth Amendment to warn driver that results of blood-alcohol test may be used in a criminal trial); *Klink v. State,* 272 Ga. 605, 606 (533 SE2d 92) (2000) ("right to refuse to submit to state-administered testing is not a constitutional right, but one created by the legislature," and due process is not violated by arresting officer's failure to warn that results of blood-alcohol test may be used in a criminal trial).