## A99A1680. MOTON v. THE STATE.
### (530 SE2d 31)

MILLER, Judge.

Indicted as a recidivist, Orville I. Moton was tried before a jury and found guilty of twice violating the Georgia Controlled Substances Act by selling cocaine to a confidential informant. He appeals from the judgment of conviction and sentences entered by the trial court on the jury's verdicts. Moton enumerates as error the sufficiency of the evidence, the admission of extrinsic acts evidence, and the life sentences imposed by the trial court. We affirm his conviction but remand for resentencing.

1. Moton's third enumeration urges the general grounds. Viewed in the light most favorable to the jury's verdict, the evidence revealed the following:

Jimmy Ferguson, the so-called confidential informant, testified he twice made controlled buys of cocaine from Moton. On February 14, 1997, Ferguson went to Moton's residence and told Moton what

he wanted. Moton went to a back room and "then came back and laid the drugs on the table. [Ferguson] picked up the drugs and gave [Moton] the money, and . . . left." On February 24, 1997, after first being searched by investigators, Ferguson returned to Moton's residence and purchased $50 worth of rock cocaine from him.

"The testimony of a single witness is generally sufficient to establish a fact. . . ."[1] The in-court identification of Moton as the seller is sufficient under the standard of *Jackson v. Virginia*[2] to authorize the jury's verdicts that Moton is guilty, beyond a reasonable doubt, of selling cocaine as alleged in the indictment.[3] The fact that the State's main witness was a drug user presented an issue of credibility, a matter exclusively for the jury.[4] That circumstance does not deprive Ferguson's testimony of its probative value.

2. On September 24, 1998, two weeks before Moton's first trial, Ferguson's pet Doberman was beaten so severely the animal had to be put to sleep. Moton moved in limine to exclude all reference to any part he may have played in the death of Ferguson's dog. This motion was denied, and Henry Lynn Searcy was allowed to testify that Moton summoned him and "asked me if I was familiar with the case Jimmy Ferguson had against him and how would I [Searcy] feel about killing a dog." Moton "pointed out [to Searcy] where the dog was tied," and informed Searcy the dog belonged to Ferguson and confirmed "that's the dog he wanted [Searcy] to kill." Searcy enlisted Fred Larkin, who took a mallet and "commenced to beating the dog until . . . there was no sound." Searcy understood the brutal killing was intended as a warning.

Moton's second enumeration of error argues this evidence of a separate crime is legally irrelevant and served only to prejudice the minds of the jury against him. We disagree.

The legitimate purpose which justifies Searcy's testimony implicating Moton in a criminal attempt to intimidate a witness against him in a pending criminal trial "is that it was evidence of a criminal act by the defendant, constituting an admission by conduct, intended to obstruct justice or avoid punishment for the crime on trial."[5] We find no error in the trial court's implicit determination that proof of Moton's intimidation of a witness was more probative than prejudicial.[6]

---

[1] OCGA § 24-4-8.

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *James v. State*, 233 Ga. App. 516, 519 (2) (504 SE2d 533) (1998); *Gantt v. State*, 229 Ga. App. 207, 208-209 (2) (493 SE2d 608) (1997); *Gay v. State*, 221 Ga. App. 263, 265-266 (2) (471 SE2d 49) (1996).

[4] *Moore v. State*, 219 Ga. App. 818, 819 (467 SE2d 5) (1996).

[5] (Citation omitted.) *Fugitt v. State*, 256 Ga. 292, 294 (1) (a) (348 SE2d 451) (1986).

[6] See *Sisson v. State*, 232 Ga. App. 61, 66 (3) (b) (499 SE2d 422) (1998).

3. The trial court sentenced Moton to concurrent life sentences. In two related enumerations, Moton contends a life sentence is unauthorized.

(a) Moton first contends the only notice he ever received that the State intended to introduce prior acts came from the State's Notice of Similar Acts. The record demonstrates otherwise.

If a life sentence is to be imposed under OCGA § 16-13-30 (d), the State must notify the accused of any conviction it intends to use in aggravation of punishment pursuant to OCGA § 17-10-2, and a notice of intent to present similar transaction evidence, standing alone, does not fulfill the State's obligation to give notice of intent to use a prior conviction in aggravation of punishment.[7]

Count 3 of the indictment is clearly captioned as a "RECIDIVIST COUNT," and expressly mentions defendant's 1990 conviction in Ben Hill Superior Court for the sale of cocaine. The State also notified defendant of its intent to use his prior conviction for the sale of cocaine "in aggravation of punishment" through its response to reciprocal criminal discovery. Thus, the fact that notice was given appears clear and not cloudy in this case.[8]

(b) Although Moton was not found guilty until January 29, 1999, and not sentenced until February 9, 1999, the crimes were committed in February 1997. Effective July 1, 1996, OCGA § 16-13-30 (d) was amended to make a life sentence discretionary and no longer mandatory.[9] Defendant's final contention is that the trial court erred in concluding a life sentence was still mandatory. We agree.

Generally, "a crime must be construed and punished according to the law existing at the time of the commission thereof. . . ."[10]

> It is the settled law of this State that where a crime is committed on a certain date, the penalty which attached to the crime on that date is the penalty extracted by our law. The . . . subsequent reduction of the penalty [applies] only to cases arising after the enactment thereof. . . . It was [therefore] mandatory for the trial court to impose the sentence provided for by the law in force at the time of the commission of the crime.[11]

In February 1997, the penalty in force under then-existing

---

[7] *Armstrong v. State*, 264 Ga. 237, 238 (1), (2) (442 SE2d 759) (1994).

[8] *Woods v. State*, 224 Ga. App. 52, 57-58 (10) (479 SE2d 414) (1996); *Moss v. State*, 206 Ga. App. 310, 312 (5) (425 SE2d 386) (1992); compare *Gates v. State*, 229 Ga. 796, 797 (4) (194 SE2d 412) (1972).

[9] *Woods v. State*, supra, 224 Ga. App. at 57 (10), n. 2.

[10] OCGA § 16-1-9.

[11] *Barton v. State*, 81 Ga. App. 810, 814 (3) (60 SE2d 173) (1950).

OCGA § 16-13-30 (d) for a second or subsequent violation of OCGA § 16-13-30 (b) was imprisonment for not less than ten years nor more than 40 years, or life imprisonment.[12] The trial court erred in imposing mandatory life sentences for crimes committed in 1997, that is, after the legislative enactment making a life sentence discretionary. We vacate these life sentences and remand the case for resentencing in the exercise of the trial court's enlightened discretion.

*Judgment of conviction affirmed. Sentence vacated and case remanded. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 16, 2000.

*C. Victor Long*, for appellant.
*Patrick J. McDonough, District Attorney, Kathryn O. Fallin, Assistant District Attorney*, for appellee.