## S07A1371. CHANCELLOR v. DOZIER.
### (658 SE2d 592)

BENHAM, Justice.

Appellant Craig Robert Chancellor, the holder of a Georgia commercial driver's license (CDL) and over the age of 21, was driving his personal vehicle in June 2006 when it left a Carroll County roadway and struck a tree. He was arrested at the scene for driving under the influence of alcohol to the extent it was less safe for him to drive. The arresting state trooper read to Chancellor the statutory implied consent notice for suspects over age 21, and appellant declined to submit to chemical testing of his bodily substances. Appellant was served with an administrative license suspension form and, following a hearing, an administrative law judge sustained the decision to disqualify appellant from driving a commercial motor vehicle for life because of his refusal to submit to state-administered chemical testing and his prior conviction for driving under the influence. OCGA § 40-5-151 (c) (2006).[1] The administrative action was upheld in an appeal to the Superior Court of Carroll County, and we granted Chancellor's application for discretionary review. We have before us his contention that the statutory implied consent notice violates due process because it did not make him aware of the actual consequences of his refusal to submit to the chemical testing.

---

[1] Any person is disqualified from driving a commercial vehicle for life if convicted of two or more violations of any of the offenses specified in . . . Code Section 40-6-391 [driving under the influence of alcohol, drugs, or other intoxicants], the refusal to submit to state-administered chemical testing as prescribed by Code Section 40-5-55, or any combination of those offenses or refusals, arising from two or more separate incidents.

In pertinent part, Georgia's implied consent statute (OCGA § 40-5-55) provides that any person who operates a motor vehicle in Georgia shall be deemed to have given consent to a chemical test of the person's bodily substances to determine the presence of alcohol or other drug if the person is arrested for driving under the influence of alcohol or drugs.[2] However, a driver has a statutory right to notice of the driver's ability to withdraw that implied consent. OCGA § 40-5-67.1 (b) requires law enforcement officers to inform the driver from whom a bodily substance is sought for testing that Georgia law requires the driver to submit to state-administered chemical testing of bodily substances, that refusal to submit to testing will result in suspension of the driver's license, and that the refusal can be used as evidence in a criminal prosecution.[3] The statute directs the arresting officer to select and read to the person the "appropriate" implied consent notice from the three notices statutorily provided: one to be read to suspects under age 21 (OCGA § 40-5-67.1 (b) (1)); one to be read to suspects over age 21 (OCGA § 40-5-67.1 (b) (2)); and one to be read to commercial motor vehicle driver suspects (OCGA § 40-5-67.1 (b) (3)). Because appellant was over the age of 21 and had been driving a non-commercial vehicle when he was arrested, the trooper read the age-appropriate implied consent notice for a suspect driving a non-commercial vehicle. OCGA § 40-5-67.1 (b) (2).

1. Appellant contends the implied consent notice read to him did not satisfy due process of law because he was not told his refusal to submit to chemical testing would result in his lifetime disqualification from having a commercial driver's license. We disagree because we conclude that, as long as the arresting officer informs the driver that the driver could lose his driver's license for refusing to submit to chemical testing, due process does not require the arresting officer to inform the driver of all the consequences of refusing to submit to chemical testing.

In *South Dakota v. Neville*, 459 U. S. 553 (103 SC 916, 74 LE2d 748) (1983), the United States Supreme Court addressed a driver's

---

[2] The public policy behind OCGA § 40-5-55 was the General Assembly's statement, embodied in the statute itself, that "the State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of OCGA § 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public."

[3] The statutory notice also informs the driver of the alcohol concentration that may result in license suspension should the driver submit to chemical testing, and the driver's right to additional chemical testing should the driver submit to the arresting officer's request for chemical testing.

contention that the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States[4] was violated by the failure of an arresting officer to advise the driver that the refusal to submit to chemical testing could be used as evidence against him in a criminal proceeding. The Court ruled it was not fundamentally unfair to allow the driver's refusal to be admitted into evidence against the driver even though the driver had not been specifically warned that the refusal could be so used. The Court based its determination on the fact that the driver's ability to refuse to submit to chemical testing was not a right of constitutional dimension, but "simply a matter of grace bestowed by the South Dakota legislature" (id. at 565), and the implied consent notice as given did not "implicitly assure a suspect that no consequence other than those mentioned will occur." Id. at 566. The Court pointed out that the warning that refusal to submit to testing could result in a year-long license revocation "made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." Id.

We followed *Neville* in *Klink v. State*, 272 Ga. 605 (1) (533 SE2d 92) (2000), when we acknowledged that the ability to refuse to submit to chemical testing "is not a constitutional right, but one created by the legislature," finding that due process was not violated by the fact that the statutory implied consent notice then existing did not inform the driver that test results could be used against the driver at trial. In *Rodriguez v. State*, 275 Ga. 283 (3) (565 SE2d 458) (2002), this Court responded to a contention that due process requires that a driver be meaningfully advised of the contents of the implied consent notice in order that the driver can decide in a meaningful fashion whether to submit to chemical testing. We again held that the implied consent notice is a matter of legislative grace and concluded that due process does not require that the implied consent notice be given in a language the driver understands. Today, we again point out that a driver's ability to refuse to submit to chemical testing is not a constitutional right, but one of legislative grace, and hold that, when the arresting officer informs the driver that refusal to submit to chemical testing could result in the suspension of the person's driver's license, due process does not require that the arresting officer inform the driver of all the consequences of refusing to submit to testing because the officer has "made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *South Dakota v. Neville*, supra, 459 U. S. at 566.

---

[4] The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."

The appellate courts of other States have reached similar conclusions with regard to the application of the Due Process Clause. See *State v. Melde*, 725 NW2d 99, 104 (Minn. 2006) (the lack of a more specific warning in the implied consent notice as to the consequences of a refusal to submit to chemical testing, when the driver has been told it is a crime to refuse, did not violate federal due process); *State v. Taylor*, 648 So2d 701, 704 (Fla. 1995) (since driver was told of possible adverse consequences of refusal to submit to testing, the failure to expressly tell him that refusal could be used against him in court did not violate the Due Process Clause); *People v. Wegielnik*, 152 Ill.2d 418, 428 (605 NE2d 487) (1992) ("Due process does not require that police warn drivers of the consequences of refusing to take a blood-alcohol test pursuant to an implied-consent statute"); *State v. Roberts*, 609 A2d 702, 703 (Me. 1992) (claim that implied consent notice which did not include all consequences of refusing chemical testing violated due process was without merit because the ability to refuse was not subject to constitutional protections since it was a matter of grace bestowed by the state legislature); *State v. Crandall*, 133 Wis.2d 251 (394 NW2d 905) (1986) (state constitution's due process clause not violated by officer's failure to inform driver that refusal to submit to testing could be used against her at trial when officer had informed driver that refusal would result in revocation of driver's license).

2. Appellant maintains that he, as the holder of a commercial driver's license, should have been given the implied consent notice applicable to commercial motor vehicle drivers, found in OCGA § 40-5-67.1 (b) (3).[5] In *Meyer v. State*, 224 Ga. App. 183 (480 SE2d 234) (1997), the Court of Appeals construed OCGA § 40-5-67.1 (b) (3) and concluded that the General Assembly intended the statutory implied consent notice entitled "for commercial motor vehicle driver suspects" was to be used for persons stopped while driving commercial motor vehicles and was not applicable to persons holding a commercial driver's license who were stopped while driving a non-commercial vehicle. Appellant contends the decision in *Meyer* is no longer applicable because the General Assembly has since enhanced the consequences to a commercial driver's license of the refusal of the license holder to submit to testing. We disagree. The language of OCGA

---

[5] Even if he had been read the notice for commercial motor vehicle driving suspects found in OCGA § 40-5-67.1 (b) (3), that notice states that refusal to submit to testing disqualifies the driver from operating a commercial motor vehicle for a minimum period of one year, and the refusal may be offered in evidence against the driver at trial. Thus, appellant would not have been informed that his refusal to submit to testing, coupled with his prior conviction for driving under the influence, would result in a lifetime disqualification from having a commercial driver's license.

§ 40-5-67.1 (b) (3) construed by the Court of Appeals in *Meyer* has not been modified and still supports that court's construction that the notice is the "appropriate" notice to be read to drivers of commercial vehicles suspected of driving under the influence. Other states also have construed their implied consent notice for commercial motor vehicle drivers as inapplicable to the holder of a commercial driver's license who is driving a non-commercial vehicle. See, e.g., *Jones v. Director of Revenue*, 237 SW3d 624 (Mo. App. 2007); *State v. Felder*, 158 P3d 375 (Kan. App. 2007); *Texas Dept. of Public Safety v. Scanio*, 159 SW3d 712 (Tex. App. 2004).

The notice for drivers of commercial motor vehicles still contains consequences for refusing to submit to chemical testing that are applicable only to drivers of commercial vehicles, and the driver is still informed that refusal to submit to testing will result in a disqualification from holding a commercial driver's license for a minimum of one year. As held in Division 1, as long as the notice informs the driver that license suspension/disqualification can result from the refusal to submit to testing, it is not a requirement of due process that all possible consequences of the refusal to submit to chemical testing be included because the officer has "made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *South Dakota v. Neville*, supra, 459 U. S. at 566.

3. Appellant also contends that his right to procedural due process was abridged by the failure to use the implied consent notice for drivers of commercial motor vehicles. Because the continued possession of a driver's license, once issued, may become essential in the pursuit of a livelihood, suspension of an issued license involves state action that adjudicates important interests of the licensee and the license is not to be taken away without that procedural due process required by the Fourteenth Amendment. *Bell v. Burson*, 402 U. S. 535, 539 (91 SC 1586, 29 LE2d 90) (1971). "The hearing required by the Due Process Clause must be 'meaningful' [cit.], and 'appropriate to the nature of the case.' [Cit.]" Id., 402 U. S. at 541-542. See also *Miles v. Shaw*, 272 Ga. 475, 477 (532 SE2d 373) (2000). OCGA § 40-5-67.1 (g) (1) provides for a recorded administrative hearing upon the timely written request of the person whose driver's license has been suspended or who is disqualified from operating a commercial vehicle, and the issues to be determined at that hearing[6] are

---

[6] Where, as is the case with appellant, the driver is arrested for DUI and refuses to submit to chemical testing, the issues for determination at the administrative hearing are
[w]hether the law enforcement officer had reasonable grounds to believe the person was driving or in actual physical control of a moving motor vehicle while under the influence of alcohol or a controlled substance and was lawfully placed under arrest for violating OCGA § 40-6-391; . . . [w]hether at the time of the request for the test

"appropriate to the nature of the case." Appellant requested and received such a hearing; thus, he was afforded the procedural due process to which he was constitutionally entitled.

Because appellant's due process rights have not been abridged, the trial court did not err when it affirmed the administrative decision to disqualify appellant for life from holding a commercial driver's license.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 10, 2008.

*Allen M. Trapp, Jr.*, for appellant.
*Thurbert E. Baker, Attorney General, Robert W. Smith, Jr., Assistant Attorney General*, for appellee.

---

or tests the officer informed the person of the person's implied consent rights and the consequence of submitting or refusing to submit to such test; and [w]hether the person refused the test. . . .

OCGA § 40-5-67.1 (g) (2). OCGA § 40-5-67.1 (h) provides for judicial review of the administrative decision.