A11A1859. THE STATE v. SAULS.
(728 SE2d 241)

BOGGS, Judge.

The State appeals from the trial court's grant of James Sauls's motion to suppress evidence of his refusal to submit to State-administered chemical testing following his arrest for DUI. The trial court granted the motion because the arresting officer omitted the portion of the implied consent notice informing Sauls that his refusal to submit to testing could be offered as evidence against him at trial. For the following reasons, we reverse.

"When an appellate court reviews a trial court's grant or denial of a motion to suppress, the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." (Citation omitted.) *State v. Nash,* 279 Ga. 646, 648 (2) (619 SE2d 684) (2005). As the facts here are undisputed, and the trial court ruled as a matter of law that the officer's failure to read the entire implied consent notice required suppression of Sauls's refusal to submit to chemical testing, we review the trial court's ruling de novo. See *Lockett v. State,* 257 Ga. App. 412, 415 (3) (571 SE2d 192) (2002).

The following facts are undisputed and were adduced at the

---

[18] *Id.* at 425 (punctuation omitted).

hearing on the motion to suppress. An officer received a report about "a driver that was driving all over the — all over Post Road[.]" The officer located the vehicle and executed a traffic stop. Following several field sobriety tests, the officer arrested Sauls for driving under the influence to the extent he was a less-safe driver, open container, and driving with a suspended license.

After placing Sauls under arrest, the officer began reading to Sauls the implied consent notice from his "Implied Consent" card. See OCGA § 40-5-67.1 (b). While the officer was reading the notice, Sauls continually interrupted the officer. A video recording of the stop reveals, and the parties do not dispute, that the officer omitted the line of the notice informing Sauls that his refusal to submit to testing could be used against him at trial. See OCGA § 40-5-67.1 (b) (2). The officer stated that he was not aware at the time he read the notice that he omitted this line and was only made aware of the omission two days before the hearing on the motion to suppress.

The trial court concluded that the implied consent notice read to Sauls was incomplete and that therefore the substance of the notice was materially altered. The court ruled that because Sauls was not properly informed of his implied consent rights, his failure to submit to testing must be suppressed.

OCGA § 40-5-67.1 (b) (2) sets forth the implied consent notice that an officer must read to a person over the age of 21 who has been arrested for driving in violation of OCGA § 40-6-391 (driving under the influence). It provides in part: "Your refusal to submit to the required testing may be offered into evidence against you at trial."[1]

We have found no Georgia precedent or statutory provision explicitly addressing the effect of the failure to inform a DUI arrestee that such a refusal could be used against him at trial. In *South Dakota v. Neville*, 459 U. S. 553, 564-566 (III) (103 SC 916, 74 LE2d 748)

---

[1] OCGA § 40-5-67.1 (b) (2) provides in full:
Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?
(Emphasis in original.)

(1983), however, the United States Supreme Court compared the implied consent notice with the right to silence under *Miranda* and concluded: "Respondent's right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota Legislature." Id. at 565 (III). The court held further that the "failure to warn [that the test results could be used against the defendant] was not the sort of implicit promise to forgo use of evidence that would unfairly 'trick' respondent if the evidence were later offered against him at trial," and concluded that "the use of evidence of refusal after these warnings comported with the fundamental fairness required by due process." Id. at 566 (III).

In *Neville*, as in the present case, the officer *did* inform the appellant that the failure to take the test would result in the loss of driving privileges for one year. Id. The *Neville* court held:

> It is true the officers did not inform respondent of the further consequence that evidence of refusal could be used against him in court, but we think it unrealistic to say that the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur. Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a "safe harbor," free of adverse consequences.

(Footnote omitted.) Id.

*Neville* was relied upon by the Supreme Court of Georgia in *Chancellor v. Dozier*, 283 Ga. 259, 260-261 (1) (658 SE2d 592) (2008). There, the defendant complained that he was denied due process because the implied consent notice read to him failed to inform him that his refusal to submit to chemical testing would result in his lifetime disqualification from having a commercial driver's license. Id. at 260 (1). The court, quoting *Neville*, concluded that "due process does not require that the arresting officer inform the driver of all the consequences of refusing to submit to testing because the officer has 'made it clear that refusing the test was not a safe harbor, free of adverse consequences.' [Cit.]" Id. at 261 (1). See also *Chancellor v. State*, 284 Ga. 66, 67 (1) (663 SE2d 203) (2008).

In light of the United States Supreme Court's holding in *Neville*, and the Supreme Court of Georgia's holding in *Dozier*, we must conclude that the trial court erred in granting Sauls's motion to suppress evidence of his refusal to submit to chemical testing.

*Judgment reversed. Mikell, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 8, 2012 —
RECONSIDERATION DENIED MARCH 23, 2012 — 

*Brian K. Fortner, Solicitor-General, Sherrill Britt, Assistant Solicitor-General*, for appellant.
*Allen M. Trapp, Jr.*, for appellee.