S11G1808. PADIDHAM v. THE STATE.
(728 SE2d 175)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *State v. Padidham*, 310 Ga. App. 839 (714 SE2d 657) (2011), to determine when the results of a State-administered Intoxilyzer 5000 breath test must be given to a defendant accused of driving under the influence (DUI) in violation of OCGA § 40-6-391.[1] Because we hold that the procedures followed by the State comport with the fundamental fairness required by due process, the decision of the Court of Appeals is affirmed.

Appellant Jyothiswar Padidham was arrested and charged with driving under the influence after being stopped for a traffic violation by a City of Duluth police officer.[2] At the time of his arrest, appellant was informed of his rights under Georgia's Implied Consent Statutes,

---

[1] Appellant was charged with violation of OCGA § 40-6-391 (a) (5) which provides that "[a] person shall not drive or be in actual physical control of any moving vehicle while[ ] [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended."

[2] The record demonstrates appellant was pulled over by a City of Duluth police officer after he was observed speeding in violation of OCGA § 40-6-181. As the officer approached the vehicle, he observed appellant's eyes were bloodshot and watery and appellant had an odor of alcohol about him. Appellant consented to perform certain field sobriety evaluations and to

OCGA §§ 40-5-55 and 40-5-67.1 (b), and was asked whether he would consent to submit to a State-administered breath test. He was further informed, consistent with the mandate of OCGA § 40-5-67.1 (b) (2), that should he submit to the State's test, he had the right to request an independent test by a qualified person of his choosing.[3] Appellant consented to testing by the State, but he at no time requested that an independent test be administered. Nor did he ask to be informed of the results of the State's test, which indicated blood alcohol levels of 0.129 and 0.126. Appellant first learned of the results of the State's test the next morning when he was provided a copy of the test results in his property bag.

Prior to trial, appellant moved to suppress evidence of the State's breath test results, arguing they were inadmissible because the State had a statutory and constitutional duty to immediately inform him of the results. The trial court agreed appellant should have been given "prompt delivery of the breath test result" and granted the motion to suppress. The Court of Appeals reversed but did not address in its opinion appellant's constitutional arguments. *Padidham*, supra.

1. We agree with the Court of Appeals that any deviation from the procedures set out in the Georgia Bureau of Investigation Division of Forensic Sciences Intoxilyzer 5000 Georgia Operator's Training Manual would go to the weight, not the admissibility, of the State's test results. See *State v. Palmaka*, 266 Ga. App. 595, 596-597 (597 SE2d 630) (2004). As a result, the State's breath test results were not inadmissible on this ground.

2. Appellant also argues the State's practice of not immediately informing DUI defendants of its test results violated his federal and state due process rights because it deprived him of the opportunity to meaningfully decide whether to request independent testing. His challenge is thus limited to the procedure used by the State for providing the results of its breath test to DUI defendants and in order to prevail he must demonstrate the procedure contains a defect so serious that it renders the process fundamentally unfair. See *Lassiter v. Dept. of Social Services*, 452 U. S. 18, 24 (101 SC 2153, 68 LE2d 640) (1981); *Meadows v. Settles*, 274 Ga. 858, 861 (561 SE2d 105) (2002) (fundamental fairness is touchstone of due process).

---

perform an alco-sensor evaluation, which indicated the presence of alcohol. Appellant was then placed under formal arrest and transported to the Gwinnett County Jail.

[3] OCGA § 40-6-392 (a) (3) provides: "The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." OCGA § 40-6-392 (a) (4) requires the arresting officer at the time of arrest to advise the arrestee of his right to a chemical test.

Both the United States and Georgia Constitutions provide that the State shall deprive no person of "life, liberty, or property, without due process of law." United States Const., Amend. XIV, Sec. 1; Art. I, Sec. I, Par. I of the Constitution of the State of Georgia (1983). "The fundamental idea of due process is notice and an opportunity to be heard." *Nix v. Long Mtn. Resources*, 262 Ga. 506, 509 (422 SE2d 195) (1992). It does not, however, guarantee "a particular form or method of state procedure. [Cit.]" Id.

The parties here do not dispute that Georgia's DUI statutes provide no specific requirement as to when the results of a State-administered breath test must be provided to defendants other than to state that full information concerning the State's test shall be made available to the defendant or his attorney "[u]pon . . . request." OCGA § 40-6-392 (a) (4). It is clear under our statutes that the State must inform a defendant at the time of his arrest for driving under the influence of his right to refuse to submit to testing by the State, as well as his right to have an independent chemical test by a qualified person in the event he chooses to submit to such testing. OCGA §§ 40-5-67.1 (b); 40-6-392 (a) (4). We have recognized with regard to this statutory obligation that "[o]ne cannot make an intelligent choice to submit to a chemical test without the knowledge of the right to have an independent test." *Garrett v. Dept. of Public Safety*, 237 Ga. 413, 415 (228 SE2d 812) (1976). These principles, however, which emanate from statutory obligations, do not compel the conclusion that the State has a constitutional duty to immediately inform a defendant of the results of its breath test.

First, a defendant's right to an independent test, a right created by OCGA § 40-6-392 (a) (3), is not one of constitutional dimension but a "matter of grace" bestowed by the Georgia legislature. See *South Dakota v. Neville*, 459 U. S. 553, 565 (103 SC 916, 74 LE2d 748) (1983); *Rodriguez v. State*, 275 Ga. 283 (3) (565 SE2d 458) (2002). Therefore, while a DUI defendant may not be deprived of his right to an independent test without appropriate procedural safeguards, the right itself is defined by and conditioned upon the legislature's choice of procedures for its application. See *Cleveland Bd. of Ed. v. Loudermill*, 470 U. S. 532, 541 (105 SC 1487, 84 LE2d 494) (1985) (" 'While the legislature may elect not to confer [an interest], it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards' "); *Chancellor v. Dozier*, 283 Ga. 259 (658 SE2d 592) (2008).

In addition, the legislature in this instance has established a procedure whereby DUI defendants are fully informed in a timely manner of their right to refuse to submit to State testing and their right to an independent test by a qualified professional. See OCGA

§ 40-5-67.1 (b); *Nelson v. State*, 135 Ga. App. 212, 213 (217 SE2d 450) (1975) (right to independent testing must be made known to defendant at time of arrest in order that he may choose to challenge accuracy of the State's test at only time such challenge would be meaningful). A DUI defendant also knows the State has probable cause to believe he is under the influence of alcohol or that his blood alcohol level is above the legal limit and that the results of the State's test may be offered into evidence against him in a future criminal trial. It is true these defendants are not immediately told of the results of the State's test, but they are at the time they must decide whether to request an independent test fully aware of their right to the test and the seriousness of the criminal proceedings being initiated against them. Accordingly, we conclude the State's failure to *immediately* inform a defendant of the results of the State-administered test does not create a situation where the defendant is left with no, or so little information, that he is denied any meaningful choice in violation of due process.[4] See *Chancellor*, supra, 283 Ga. at 261 (due process does not require officer to inform driver of all consequences of refusing to submit to State testing); *Rodriguez v. State*, supra, 275 Ga. at 287 (3) (due process does not require implied consent notice be given in language driver understands); *Klink v. State*, 272 Ga. 605 (1) (533 SE2d 92) (2000) (due process not violated by fact that implied consent notice did not inform driver test results could be used against him at trial).

While we agree with appellant that the additional information contained in the State's test results would undoubtedly be useful to a DUI defendant and might affect his decision whether to request an independent test, due process does not require the State to disclose any or all information a defendant might consider helpful. *Chancellor*, supra, 283 Ga. at 261. See generally *Wardius v. Oregon*, 412 U. S. 470, 474 (93 SC 2208, 37 LE2d 82) (1973) (due process has little to say regarding amount of discovery parties must be afforded). As the United States Supreme Court stated in *Neville*, supra, 459 U. S. at 564, the choice to submit or refuse to submit to the analysis of one's blood, breath, urine or other bodily substance will not be an easy or

---

[4] Nor is this a case where the State's procedure denies criminal defendants their right to present a complete defense. See *Chambers v. Mississippi*, 410 U. S. 284, 294 (93 SC 1038, 35 LE2d 297) (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations"); *California v. Trombetta*, 467 U. S. 479, 485 (104 SC 2528, 81 LE2d 413) (1984) (due process requires meaningful opportunity to present a complete defense). DUI defendants remain free to challenge the validity of the State's breath test on alternative grounds, including faulty calibration, faulty measurements, and operator error. Id. at 490 (State's failure to preserve breath samples did not deprive defendants of ability to demonstrate their innocence in violation of due process).

pleasant one to make, "[b]ut the criminal process often requires suspects and defendants to make difficult choices." DUI defendants similarly must determine, often under difficult and stressful circumstances, whether to request an independent test. That the choice may be difficult does not render it fundamentally unfair, and this fact alone does not support a due process claim.

It is undisputed in this case that the police officer delivered to appellant the required implied consent notice in an accurate and timely manner thereby informing appellant of his right to an independent test. Having done so, the State was under no constitutional duty to immediately inform appellant of the results of the State-administered breath test. Accordingly, the decision of the Court of Appeals is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 7, 2012 —
RECONSIDERATION DENIED MAY 29, 2012.

*Robert W. Chestney, James K. Sullivan,* for appellant.
*Rosanna M. Szabo, Solicitor-General, Karen M. Seeley, Assistant Solicitor-General,* for appellee.