S12G1292. SAULS v. THE STATE.
(744 SE2d 735)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *State v. Sauls*, 315 Ga. App. 98 (728 SE2d 241) (2012), to consider whether the Court of Appeals erred in reversing the grant of defendant Sauls's

---

motion to suppress evidence that he refused to submit to chemical testing where the police officer failed to convey the entire substance of the implied consent notice required by OCGA § 40-5-67.1 (b) (2).[1] For the reasons that follow, we conclude that the holding was in error, and we reverse the judgment of the Court of Appeals.

The facts as found by the Court of Appeals are the following. Sauls was pulled over by a police officer following a report about his erratic driving. After administering several field sobriety tests to Sauls, the officer arrested him for driving under the influence to the extent that he was a less-safe driver ("DUI"), open container, and driving with a suspended license. The officer then read to Sauls the implied consent notice, as codified in OCGA § 40-5-67.1 (b) (2), from the officer's "Implied Consent" card even though Sauls interrupted the officer during the reading. The officer failed to read the notice in its entirety, omitting the sentence: "Your refusal to submit to the required testing may be offered into evidence against you at trial."[2] Sauls refused to submit to State-administered chemical testing.

The trial court granted Sauls's motion to suppress the evidence of his refusal to have the testing.[3] It did so after finding, inter alia, that the officer's omission materially altered the substance of the implied consent notice.

The Court of Appeals reversed the grant of suppression, after stating that there was no Georgia precedent or statutory provision addressing the effect of the failure to inform a DUI arrestee of the possible use of evidence of the refusal of testing against the arrestee at trial, and that the omission did not constitute a violation of due

---

[1] OCGA § 40-5-67.1 (b) (2) in effect at the time of Sauls's arrest on October 13, 2010, and applicable to Sauls as a suspect over the age of 21 provided:

> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. *Your refusal to submit to the required testing may be offered into evidence against you at trial.* If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (desig-nate which tests) under the implied consent law?

(Emphasis supplied.)

[2] This sentence remains in the present version of OCGA § 40-5-67.1 (b) (2).

[3] The trial court specifically suppressed and ordered redacted the portion of a video/audio recording of Sauls's arrest involving his refusal of testing.

process. However, the analysis and consequent conclusion by the Court of Appeals are flawed.

As noted, the linchpin of the holding by the Court of Appeals is the determination that there was not a violation of due process under either the Federal or State Constitutions. Indeed, the Court cited *South Dakota v. Neville*, 459 U. S. 553 (103 SCt 916, 74 LE2d 748) (1983), and *Chancellor v. Dozier*, 283 Ga. 259 (658 SE2d 592) (2008), as direct support for its conclusion that the trial court erred in granting suppression.

In *Chancellor v. Dozier*, the appellant contended that the implied consent notice as read to him violated due process because he was not told that a consequence of his refusal to submit to chemical testing would be his lifetime disqualification from holding a commercial driver's license. Id. at 260 (1). This Court rejected the due process challenge, concluding that due process was satisfied when the arresting officer informed the appellant driver that he could lose his driver's license for refusing to submit to chemical testing, even though the driver was not told of the consequence that he could never have a commercial driver's license. Id. In so doing, this Court discussed at length the United States Supreme Court's decision in *South Dakota v. Neville*, which addressed the claim that due process under the Federal Constitution was compromised when the arresting officer failed to advise the driver that the refusal of chemical testing could be used as evidence against him in a criminal proceeding. *Chancellor v. Dozier*, supra at 260 (1). As we noted, the United States Supreme Court ruled it was not fundamentally unfair to allow the refusal into evidence against the driver because "the driver's ability to refuse to submit to chemical testing was not a right of constitutional dimension," but rather was "a matter of grace bestowed by the South Dakota legislature." *South Dakota v. Neville*, supra at 565. Indeed, this Court has readily acknowledged that to be permitted to refuse to submit to chemical testing is not a right of constitutional magnitude but is one created by legislative enactment, and that a violation of due process is not implicated when the statutory implied consent notice does not inform the driver that test results could be used against the driver at trial. *Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000). But, the proper analysis in the present case does not end with inquiry into the issue of due process.

At the time of Sauls's arrest and now, OCGA § 40-5-67.1 (b) provides, in relevant part, that the implied consent notice "shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged." Thus, in regard to the propriety of the suppression of the evidence in question, a determinative issue is also whether the implied consent notice that was

actually given the driver was "substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing." *State v. Barnard*, 321 Ga. App. 20, 23 (740 SE2d 837) (2013). If the police officer, even inadvertently, gives the driver implied consent notice which contains misleading information, then the notice as given impairs the driver's ability to make an informed decision about whether to submit to testing, and consequently, the driver's test results or evidence of the driver's refusal to submit to testing must be suppressed. Id.; *McHugh v. State*, 285 Ga. App. 131, 133 (645 SE2d 619) (2007). And, a material omission may be as potentially misleading as an error of commission. See *State v. Hassett*, 216 Ga. App. 114 (453 SE2d 508) (1995); *State v. Causey*, 215 Ga. App. 85 (449 SE2d 639) (1994).

Certainly, not every omission or misstatement in the implied consent notice given to the driver is of such potential significance so that the notice cannot be found to be substantively accurate. See and compare *Yarbrough v. State*, 241 Ga. App. 777, 778 (1) (527 SE2d 628) (2000); *State v. Garnett*, 241 Ga. App. 315 (527 SE2d 21) (1999); *Maurer v. State*, 240 Ga. App. 145, 146-147 (2) (525 SE2d 104) (1999). However, the General Assembly has determined that drivers should be made aware of the potentially most serious consequence of refusal of testing, i.e., that such evidence can be used against the driver at a subsequent criminal prosecution in which the driver's liberty may be at stake. Therefore, the complete omission of this consequence of the refusal of testing renders the implied consent notice insufficiently accurate so as to permit the involved driver to make an informed decision about whether to submit to testing. *McHugh v. State*, supra at 133.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 17, 2013.

*Allen M. Trapp, Jr.*, for appellant.
*Matthew C. Krull, Solicitor-General, Courtney L. Mays, Assistant Solicitor-General*, for appellee.