**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A1638. HERNANDEZ v. THE STATE.

BARNES, Presiding Judge.

Amanda Hernandez appeals from the denial of her motion to suppress, as amended, the results of her blood test following her arrest for DUI. Because her consent to the blood test was premised on inaccurate information as to the consequences of refusing consent, we reverse the trial court's judgment.

"[O]n a motion to suppress, the State has the burden of proving that a search was lawful." (Punctuation and footnote omitted.) *State v. Hammond*, 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012) Thus, "when relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." (Citation and punctuation omitted) *Williams v. State*, 296 Ga. 817, 821 (771 SE2d 373) (2015).

Where, as here, the relevant facts are undisputed, this Court's review is de novo. *State v. Oyeniyi*, 335 Ga. App. 575, 575- 576 (782 SE2d 476) (2016).

The facts as testified to at the motion to suppress hearing demonstrate that on October 2, 2015, Hernandez was stopped by a Georgia State Patrol trooper for speeding. Hernandez produced a valid Washington State driver's license, but when the trooper noticed the odor of alcohol, he began a DUI investigation. The trooper requested that Hernandez exit her car, and as they talked, he noticed that, in addition to the "smell of alcohol," Hernandez "had a slight slur in her speech." Hernandez told the trooper that she was coming from a "local tavern" and had consumed a "few drinks" so he asked her to take a preliminary breath test ("PBT"). Hernandez complied and the BPT test was positive for breath alcohol. Hernandez also consented to the administration of field sobriety tests, resulting in six out of six possible clues in the horizontal gaze nystagmus test, eight out of a possible eight clues in the walk-and-turn test, and three out of a possible four clues in the one-leg stand test. After the field sobriety tests were administered, the trooper advised Hernandez that she was being arrested for DUI, placed her in handcuffs, and then "went into reading the implied notice . . . [for] over 21." The trooper testified that although at the time he read her the implied consent notice Hernandez "started to cry a little bit because . .

. she [was] being handcuffed and . . . arrested," she did not appear to be afraid, confused or under any duress.

Only the events following Hernandez's field sobriety tests and arrest were captured in an audiovisual recording of the traffic stop from the trooper's dashboard camera introduced at the hearing.[1] The recording shows that after placing Hernandez under arrest, the trooper read her the implied consent notice for age 21 and over, and Hernandez responded, "Okay, yes," when asked whether she would submit to state administered chemical testing of her blood. The trooper responded, "that's a verbal yes." After the trooper informed Hernandez that he would be taking her to the hospital, she asked why and the following exchange ensued:

Trooper: Well, drawing your – [unintelligible] – I read you that card – the implied consent – when you get a driver's license – at the time of arrest for DUI, you have an implied consent.

Hernandez: Mm-hm?

---

[1] Audio and video of the events that transpired prior to the reading of the implied consent notice were not captured by the trooper's dashboard camera. The trooper testified that the video was not captured because "between her car and my car, there was an uphill slope," and that he did not know why the audio was not recorded.

Trooper: I read that to you – and – gave you a choice of doing a state blood test.

Hernandez: Oh. So, no, I don't want to do that. Do I have to?

Trooper: You don't have to –

Hernandez: I do not want to do that.

Trooper: – it's your choice. But it's a state test, and if you refuse it, then your driving privileges can be suspended for a year.

Hernandez thereafter continued to question the trooper about the distinctions between a breath test, a blood test, the reasons for each, and the need for consent for each, and the following additional exchanges ensued:

Trooper: Are – are you – so are you saying "yes" to the blood or "no" to the blood?

Hernandez: Well, is that the one you're choosing – out of all three?

Trooper: Yes. I'm – that's the one I'm choosing –

Hernandez: Do I have to say "yes"?

Trooper: – that's the one I – that's – you can – you can say "yes" or "no"; it's your choice.

Hernandez: I'd rather say "no."

Trooper: Mm-kay. And if you say "no" – mm-kay – if you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at – court – at trial. So you have a choice of either "yes" – refuse – or to accept it.

Hernandez: Well, I guess I don't my – license be re- – revoked, so I guess – yes, do it, if you have –

Trooper: Mm-kay –

Hernandez: – to do it.

Trooper: – so we're going to say "yes," then?

Hernandez: If you have to, yeah.

Trooper: -kay.

Hernandez: If you have to, right?

Trooper: No, we don't have to; it's your choice. You have the choice, either–

Hernandez: So, what was the point of me blowing, then? Why did I blow?

Trooper: The blowing is a PBT, it's – it's a [unintelligible] –

Hernandez: It's not state?

Trooper: It's not the state test; it just – it's a roadside evaluation test.

5

Hernandez: [Unintelligible.] That's fine.

Approximately 11 minutes later, Hernandez again inquired about the reason for the blood test.

Hernandez: Can you explain to me one more time why I have to give a blood – a blood sample? I have to?

[Trooper briefly speaks with tow truck driver.]

Hernandez: I have to.

Trooper: No, you don't have to. You asked –

Hernandez: But if I don't, you'll – suspend my license?

Trooper: Yes.

Hernandez: If what? No matter what?

Trooper: Yes.

Hernandez then again agreed to the blood test in the following exchange:

Hernandez: Is that just like a Georgia thing?

Trooper: That's – pretty much an everybody thing.

Hernandez: So – really?

Trooper: Uh-huh.

Hernandez: So – I guess, whatever.

The trooper transported Hernandez to a nearby hospital for the blood draw. At the hearing, he testified that Hernandez did not rescind her consent in the "two to three minutes" drive to the hospital, and that at the hospital "she sat down in the chair and took her coat off and got everything done. When it was finished, she put her coat back on and I re-handcuffed her." Hernandez did not testify at the hearing.

In denying Hernandez's motion to suppress the results of the test, the trial court found that

> [a]s to implied consent, the trooper read all portions of the implied consent law in a timely manner after arrest. He read implied consent for the defendant more than once and explained the options when the defendant asked questions. The trooper designated which test he wanted defendant to take, which he was entitled to do. He told the defendant more than once that she did not have to perform the blood test and that it was her choice. The trooper treated the defendant with courtesy and respect during their interactions. The defendant was not under duress when she agreed to give a sample of her blood. She voluntarily provided her arm for the blood draw and was not forced or coerced to do so.

On appeal, Hernandez contends that the trial court erred in denying her motion to suppress because although she had initially consented to providing a blood sample after the implied consent notice was read, during the ensuing discussions with the

7

trooper, she withdrew her consent and only consented again when the trooper erroneously told her that her Washington license would be suspended if she refused.

The implied consent notice for drivers age 21 or over provides as follows:

Georgia law requires you to submit to the state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your *Georgia* driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your *Georgia* driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your [blood] under the Implied Consent Law?

(Emphasis supplied.) OCGA § 40-5-67.1 (b) (2). As it relates to non-resident drivers, OCGA § 40-5-51 (a) provides that, "[t]he *privilege* of driving a motor vehicle on the highways of this state given to a nonresident under this chapter shall be subject to suspension or revocation by [Georgia's Department of Driver Services ("DDS")] only

8

when suspension or revocation is required by law for the violation." (Emphasis supplied.) Thus, generally, "DDS has no authority to suspend or revoke the driver's license of a nonresident motorist." *State v. Barnard*, 321 Ga. App. 20, 23 (1) (740 SE2d 837) (2013).

In consideration of whether as Hernandez argues, the trooper's misstatement of the implied consent was so material as to invalidate her consent,

> [t]he determinative issue . . . is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing. Even when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.

(Footnote omitted.) *Barnard*, 321 Ga. App. at 23 (1). See OCGA § 40-5-67.1 (b) (the notice "shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged"); *Sauls v. State*, 293 Ga. 165, 168 (744 SE2d 735) (2013) ("[Where an officer] gives the driver implied consent notice which contains misleading information, then the notice as given impairs the driver's ability

9

to make an informed decision about whether to submit to testing, and consequently, the driver's test results or evidence of the driver's refusal to submit to testing must be suppressed."), overruled in part on other grounds by *Olevik v. State*, 302 Ga. 228, 246 (2) (c) (iv) & n. 11 (806 SE2d 505) (2017).[2]

We have held that an implied consent notice that misinforms the holder of an out-of-state driver's license that refusal to submit to state testing will result in revocation of the out-of-state license is "the type of misleading information" that impedes a suspect's ability to make an informed choice under the implied consent statute and thereby renders ensuing test results inadmissible. *Kitchens v. State*, 258 Ga. App. 411, 414 (1) (574 SE2d 451) (2002); accord *State v. Peirce*, 257 Ga. App. 623, 625 (1) (571 SE2d 826) (2002) ("Where the consent was based at least in part on deceptively misleading information concerning a penalty for refusal which the state was not authorized to implement, there was no informed choice and the test results are inadmissible."); *Deckard v. State*, 210 Ga. App. 421, 421-423 (436 SE2d 536) (1993) (reversing denial of motion to suppress breath test results where the

---

[2] In *Olevik*, the Supreme Court reversed *Sauls* only "to the extent [that the Court in *Sauls* held] that Paragraph XVI of the Georgia Constitution does not protect against compelled breath tests or that the right to refuse to submit to such testing is not a constitutional right." *Olevik*, 302 Ga. at 246 (2) (c) (iv) & n. 11.

10

arresting officer misinformed the defendant that his out-of-state driver's license would be suspended if he refused to submit to testing).

Although here the trooper twice told Hernandez – accurately – that a refusal to submit to a blood test would result in the suspension of her driving privileges in Georgia, the last two exchanges indicate that Hernandez believed that her Washington driver's license would be suspended if she refused a blood test. The trooper told Hernandez that, "it's a state test, and if you refuse it, then your driving privileges can be suspended for a year," and that it is "pretty much an everybody thing," after Hernandez asked, "Is that just like a Georgia thing?" After having granted and then denied consent, Hernandez then consented, saying, "So – I guess, whatever."

The State contends that Hernandez had consented to the blood tests after twice being informed correctly about the impact of refusal, and thus had already made her decision before the misleading statement. However, the evidence also demonstrates that Hernandez rescinded her consent more than once after being so informed. Her final consent was given only after she appeared to believe that her Washington license would be revoked if she refused. Accordingly, we cannot say that the statement did not coerce Hernandez to consent to the state-administered test, and thus the trial court erred in denying her motion to suppress.

*Judgment reversed. Reese, J., concurs and McMillian, J., concur in judgment only.*

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a)**.